**PRUDENTIAL HEALTH CARE PLAN, INC., Appellant,**

v.

**COMMISSIONER OF INSURANCE, et al., Appellees.**

No. 13289.

Court of Appeals of Texas, Austin.

Dec. 23, 1981.

Rehearing Denied Jan. 13, 1982.

John F. Morehead, Mary A. Keeney, Daugherty, Kuperman, Golden, Carlisle & Morehead, Austin, for appellant.

Mark White, Atty. Gen., Yolanda Martin, Asst. Atty. Gen., Austin, for appellees.

POWERS, Justice.

Prudential Health Care Plan, Inc., appellant, sued to recover $90,627.89 paid under protest to the Comptroller of Public Accounts[1] pursuant to the requirements of article 20A.33 of the Texas Insurance Code. The district court tried the case without a jury and entered a take-nothing judgment against appellant, who perfected its appeal to this Court.

Appellant is a corporation organized and existing under the laws of the State of Texas, doing business as a health maintenance organization (HMO) under the provisions of Chapter 20A of the Insurance Code, the Texas Health Maintenance Organization Act.[2] The Act forbids the operation of an HMO in the State without a certificate of authority issued by the Commissioner of Insurance.[3] The Act allows "any person" to obtain authority to operate as an HMO and defines "person" to include natural persons and such artificial persons as partnerships, associations, "organizations, trusts and corporations."[4]

Article 20A.33, as it existed before June 13, 1979,[5] imposed upon HMOs the requirement that they pay certain "taxes."[6] That article provided as follows:

Sec. 33. Taxation

(a) To defray the expense of carrying out the provisions of this Act, there shall be annually assessed and collected by the State of Texas, through the State Board of Insurance, from *each corporation* operating under this Act, in addition to all other taxes now imposed, or which may hereafter be imposed by law, a tax of one percent of all revenues received by *such corporation* in return for issuance of health maintenance certificates or contracts in this state, according to the reports made to the State Board of Insurance as required by law. Said taxes, when collected, shall be placed in a separate fund with the State Treasurer which shall be kept separate and apart from other funds and money in his hands, and shall be known as the Health Maintenance Organization Fund, said fund to be expended during the current and succeeding years, or so much thereof as may be necessary, in carrying out such provisions. Such expenditures shall not exceed in the aggregate the sum assessed and collected from such corporations; and should there be an unexpended balance at the end of

---

1. The Comptroller, Bob Bullock, was defendant in the trial court, together with Elmer J. Voorhis, Commissioner of Insurance; Warren G. Harding, State Treasurer; and Mark White, Attorney General. All four officials are appellees in this appeal. The cause of action for a refund of taxes and fees paid under protest is a statutory cause of action created by Tex. Tax.-Gen. Ann. art. 1.05 (Vernon 1969).

2. Tex.Ins.Code Ann. art. 20A.01–20A.35 (Vernon 1981). Unless otherwise indicated, all statutory references are to articles of the Texas Health Maintenance Organization Act.

3. Article 20A.03(a).

4. Article 20A.02(j), (*l*). Article 20A.04, governing applications for certificates of authority to operate as an HMO, requires that the application be accompanied by a "copy of the basic organizational document, if any, of the applicant, such as the articles of incorporation, articles of association, partnership agreement, trust agreement . . . and all amendments thereto. . . ."

5. Article 20A.33 was amended effective June 13, 1979. Because the present appeal involves only sums paid before that day, our references to article 20A.33 are to the earlier version of the statute. The amendment cured the constitutional defects discussed herein.

6. The article immediately preceding, article 20A.32 requires the payment of certain "fees" to the commissioner of insurance, to-wit: $250.00 for filing its original application for a certificate of authority; $100.00 for filing each annual report required by article 20A.10; the expenses of any investigation conducted pursuant to the act; and the licensing, appointment and examination fees required of "agents" under article 20A.15. Subsections (a) and (d) existed in different form before the 1979 amendment but the difference is not material to this appeal. The "fees" imposed by article 20A.32 were required of *all* HMOs, whether a natural person, corporation, partnership, association, organization or trust. In contrast, the "taxes" imposed in article 20A.33 were required only of corporate HMOs.

any year, the State Board of Insurance shall reduce the assessment for the succeeding year so that the amount produced and paid into the State Treasury together with said unexpended balance in the treasury will be sufficient to pay all expenses of carrying out the provisions of this Act, which funds shall be paid out and filed by a majority of the State Board of Insurance when the comptroller shall issue warrants therefor. Any amount remaining in said fund at the end of a year shall be carried over and expended in accordance with the provisions of this article during the subsequent year or years. Provided, that no expenditures shall be made from said fund except under the authority of the legislature as set forth in the general appropriations bill.

(b) *Each corporation* complying with requirements of this Act shall on or before the first day of March of each year file its annual statement showing the gross amount of revenues collected during the year ending December 31 preceding, and *each such corporation* if organized under the laws of this State shall pay an annual tax for the gross amounts of revenues collected for the issuance of health maintenance certificates or contracts in accordance with Article 7064a, Revised Civil Statutes of Texas, 1925, as amended; if *such corporation* is not organized under Texas laws, *said corporation* shall pay an annual tax for the gross amounts of revenues collected for the issuance of health maintenance certificates or contracts in accordance with Article 4769, Revised Civil Statutes of Texas, 1925, as amended. Upon receipt of the sworn statement above provided, the State Board of Insurance shall certify to the State Treasurer the amount of taxes due by *such corporation* which shall be paid to the State Treasurer on or before March 15 following, and the State Treasurer shall issue his receipt therefor as evidence of the payment of such tax. Such taxes shall be for and on account of business transacted within this state during the calendar year ending December 31 in which such payments were collected for that portion of the year during which *the corporation* transacted business in this state.

(c) *Each such corporation* shall be subject to the provisions of Articles 7074 through 7078 of the Revised Civil Statutes of Texas, 1925, as amended. (emphasis added).

The literal words of article 20A.33 manifest an obvious discrimination between those HMOs which have a corporate form of organization and those which do not, with respect to the charges imposed in the article. It is upon this different treatment that the parties join issue.

Appellant attacks the constitutionality of article 20A.33, claiming each subdivision of that article contravenes the following constitutional provisions: article VIII, section 1 of the Constitution of Texas, 1876, requiring that all taxation, specifically including occupation taxes, be "equal and uniform;" article I, section 3 of the Constitution of Texas, 1876, which guarantees all persons equal protection of the law, and the similar guarantee of the 14th amendment of the Constitution of the United States; and article I, section 19 of the Constitution of Texas, 1876, which guarantees all persons due process of law, and the similar guarantee of the 14th amendment of the Constitution of the United States. Appellant claims that no substantial, reasonable basis exists for the discrimination expressed in article 20A.33.

Appellees reply that the charges imposed by article 20A.33 do not contravene the "equal and uniform" requirement of article VIII, section 1 of the Constitution of Texas, 1876, because they are not taxes at all, being only "fees" imposed for regulatory purposes under the police power, and not the taxing power, of the sovereign, notwithstanding their denomination as "taxes." Appellees assign this meaning to the charges on the basis of their view of the primary purpose of the statute and the charges authorized by it. In the alternative, appellees say, the discrimination has a reasonable basis, and is therefore valid: (1) as being an attempt to bring corporate HMOs within a tax liability imposed upon all other corporate insurance companies,

which liability corporate HMOs would otherwise escape; and (2) as being a charge on the privilege of doing business as an HMO in corporate form, justifiable on the basis of the commercial advantages derived from that privilege. We will discuss each point raised by the parties.

■■■ The discussion which follows is in the context of the established principles pointed out by appellees. The constitutionality of the statute is presumed and it will not be held unconstitutional unless it is absolutely necessary to do so. *Texas State Board of Barber Examiners v. Beaumont Barber College*, 454 S.W.2d 729 (Tex.1970). Every reasonable intendment and presumption is indulged in favor of a statute's constitutionality and it is our duty to give the statute an interpretation that will render it constitutional, if it is possible to do so. *Hamrick v. Simpler*, 127 Tex. 428, 95 S.W.2d 357 (1936). Our primary task is to ascertain and enforce the legislative intent, where constitutional, even though our interpretation may depart from the strict letter of the

law as used by the legislature. *Edwards v. Morton*, 92 Tex. 152, 46 S.W. 792 (1898); *Board of Insurance Commissioners v. Sproles Motor Freight Lines, Inc.*, 94 S.W.2d 769 (Tex.Civ.App.—Fort Worth 1936, writ ref'd). Moreover, our discussion is within the confines of the findings of fact and conclusions filed by the trial court.[7]

We should point out in the beginning that article 20A.33 levies two distinctly-different charges under the single heading "Taxation." Subdivision (a) of the statute levies a charge "assessed and collected by the State of Texas, through the State Board of Insurance," the revenue derived therefrom being kept in a separate fund to be used exclusively for the purpose of defraying the cost of administering the Act. After the first-year levy of one-percent, the rate at which the charge is made may vary as determined by the Commissioner of Insurance to be necessary to produce an amount of revenue equal to the cost of administering the Act. Subdivision (b), on the other hand, incorporates the levy of a tax actually

---

7. The findings of fact relevant to our discussion are as follows:

 a. It was the intent of the legislature, in its enactment of article 20A.33, to impose gross premiums and "maintenance taxes" upon all HMOs.

 b. The appellant paid $90,627.89 to the State under the provisions of article 20A.33, in the component amounts indicated below.

 c. At the time of trial there were seven corporations and one limited partnership operating in the State as HMOs under certificates issued by the commissioner of insurance.

Though the first three are listed as "findings of fact," the trial court made the following conclusions of law:

 a. Article 12.03, Tax.-Gen., V.T.C.S., exempts from the state franchise tax those insurance companies and other companies that pay an annual tax measured by their gross receipts.

 b. Article 20A.33(b) of the Texas Insurance Code imposes an annual tax upon HMOs based upon their gross amount of premiums.

 c. HMOs, like other corporations regulated under the Texas Insurance Code, pay gross premium taxes in lieu of franchise taxes to the State of Texas.

 d. Article 20A.33 of the Texas Insurance Code is constitutional and does not violate either the equal protection clause of the 14th amendment to the Constitution of the United

States nor the equality and uniformity clauses of article VIII, sections 1 and 2, of the Constitution of Texas, 1876.

In reference to the one HMO which was a limited partnership operating under a certificate issued by the Commissioner of Insurance, the trial court found that the Commissioner was empowered by the Texas Health Maintenance Organizations Act to administer and enforce its provisions; that on January 6, 1977, the Commissioner promulgated rules which uniformly applied to all HMOs certified by him; that all such rules have been uniformly applied; and that all HMOs (including the one limited partnership) have paid the gross premium taxes and the maintenance taxes imposed by article 20A.33, as required by the Commissioner's rules.

It is not disputed that at the time of trial in the present case, there were eight HMOs operating in the State. Seven of them were corporations and one was a limited partnership. Appellant is, of course, one of the corporations operating as an HMO. In its suit, appellant seeks to recover sums paid under article 20A.33 for the years 1977 and 1978, totaling $90,627.89 and composed as follows:

Paid Under Article 20A.33

| | Subsection (a) | Subsection (b) | Total |
|---|---|---|---|
| 1977 | $21,779.40 | $ 1,074.89 | $22,854.29 |
| 1978 | 50,039.08 | 17,734.52 | 67,773.60 |
| | $71,818.48 | $18,809.41 | $90,627.89 |

made by two *other* statutes. These two statutes impose a fixed-rate tax against the annual gross premiums received by insurance corporations as a result of their Texas business.[8] Insurance corporations are exempt from the State franchise tax, imposed upon all other corporations as a charge against the privilege of doing business in that form. These *other* two statutes levy a tax in lieu of the franchise tax paid by other corporations. It may therefore be said that subdivision (b) levies against corporate HMOs a charge which ultimately stands in lieu of the franchise tax and benefits the general revenues of the State.

Appellant contends that article 20A.33(a) imposes a tax and not a mere license fee. Appellant points to the fact that the statute itself denominates the charge a "tax;" that license and other fees are charged HMOs in another section of the Texas Health Maintenance Organization Act, article 20A.32; and that the segregation of the revenue derived from article 20A.33 into a particular fund, for payment of regulatory expenses only, does not compel the inference that a mere regulatory fee was intended by the legislature, citing *Conlen Grain & Mercantile, Inc. v. Texas Grain Sorghum Producers Board*, 519 S.W.2d 620 (Tex.1975), where it was held that a charge assessed the producers of an agricultural commodity was an "occupation tax" within the meaning of the State Constitution, though the funds derived from the charge were to be used solely "to finance programs of research, education, and promotion, designed to encourage the production, marketing, and use of such commodity." Tex.Rev.Civ.Stat.Ann. art. 55c, § 3 (Vernon 1969).

Appellees contend the legislative intent was to tax ·*all* HMOs under article 20A.33(a), citing an interim report of the House Insurance Subcommittee on Securities of the Sixty-Sixth Legislature; that the limitation of the charge made by the statute to corporations only was an oversight cured by a subsequent amendment of the statute; that consistent with the legislative intent discerned by him, the Commissioner of Insurance promulgated regulations which compelled payment of the charge by *all* HMOs and all of them, even the one HMO which is a limited partnership, have indeed paid the charge; that the primary purpose of the charge, however, is regulation and not the raising of revenue, making it a regulatory "fee" and not a "tax," although it is denominated a "tax;" that the charge therefore does not originate in the taxing power of the State subject to the requirements of equality and uniformity; and that authority for such a charge for regulatory purposes originates rather in the police power of the State and is limited by a standard of reasonableness, the different treatment being reasonable in this case because it may be justified on the basis of the commercial advantages derived from the State-granted privilege of doing business in a corporate form. *Norris v. City of Waco*, 57 Tex. 635 (1882); *Reed v. City of Waco*, 223 S.W.2d 247 (Tex.Civ.App.—Waco 1949, writ ref'd); *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896 (1937); *County of Harris v. Sheppard*, 156 Tex. 18, 291 S.W.2d 721 (1956); and *H. Rouw Co. v. Texas Citrus Commission*, 151 Tex. 182, 247 S.W.2d 231 (1952). With respect to the charge imposed by article 20A.33(b), appellees make basically the same arguments.

A fair reading of the Texas Health Maintenance Organization Act reveals it to be a typical exercise of the State's inherent police power in the interest of the public health, safety and welfare. The statute addresses and works upon an occupation or activity that is originally lawful and not forbidden by the common law or any other statute. The occupation or activity—the furnishing or arranging of health care services on a prepaid basis—is prohibited by the statute only for the purposes of compelling one who would perform the activity to take out a license. Incidental to obtaining and

---

**8.** Tex.Rev.Civ.Stat.Ann. arts. 7064a (Vernon Supp.1980) and 4769 (Vernon 1981). The revenue derived from these taxes levied against foreign and domestic insurance companies writing insurance in Texas, and doing business therein in a corporate form, benefits the general revenues of the State.

holding the license, the statute imposes several requirements to assure financial solvency of the HMO and otherwise protects or accommodates the public interest by regulating the conduct of the HMO's business. It cannot be doubted that *regulation* in the public interest is the aim of the statute as a whole.

Of the two kinds of charges imposed by article 20A.33, we believe the one imposed by subdivision (a) to be intended primarily for regulation and the one imposed by subdivision (b) to be intended primarily for revenue.

### ARTICLE 20A.33, SUBDIVISION A

The parties vigorously dispute whether the charge imposed by subdivision (a) is intended primarily for revenue, as appellant contends, or for regulation, as appellees contend. The resolution of the issue determines the applicability of article VIII, section 1 of the Constitution of Texas, 1876, which provision requires that all taxation, and particularly all occupation taxes within a given class, be "equal and uniform." If the charge imposed by subdivision (a) is a "tax" it patently is not equal and not uniform for it expressly limits the charge to corporate HMOs.

Each party relies upon a different power of government. Appellant refers the charge imposed under subdivision (a) to the taxing power of the sovereign, subject to the specific constitutional limitation upon that power set out in article VIII, section 1. Appellees refer the charge imposed under that subdivision to the police power inherent in sovereignty and subject to the general constitutional limitations upon the State's exercise of the police power—that is, it must not be so unreasonable, arbitrary or capricious as to contravene the guarantees of substantive due process of law, equal protection and equal immunities contained in the Federal and State constitutions.

▮ We believe there are sufficient indicia of the legislative intent to warrant our holding that the charge authorized by subdivision (a) is intended primarily for regulation and not for revenue. While no single indicia standing alone compels the holding, the several do when considered together, viz.: the assignment of the revenue to a particular fund to be used solely for carrying out the regulatory purposes of the statute; the annual adjustments required of the Commissioner to produce only that amount of revenue needed to pay the cost of regulation [an unusual, though not to say unconstitutional, delegation of the power to fix *tax* rates. *See* 16 C.J.S. Constitutional Law § 133 (1956)]; and authority for the charge is found among numerous other powers, requirements and conditions which are, without question, purely regulatory in nature, in a statute having the general purpose of regulation. Therefore, in accordance with the rule that the primary purpose of such a charge determines whether it is a tax or a regulatory fee, we hold it to be the latter in this case. *Hoefling v. City of San Antonio*, 85 Tex. 228, 20 S.W. 85 (1892); *Sam's Loan Office v. City of Beaumont*, 49 S.W.2d 1089 (Tex.Com.App.1932, judgmt adopted); *Brown v. City of Galveston*, 97 Tex. 1, 75 S.W. 488 (1903); *City of Fort Worth v. Gulf Refining Co.*, 125 Tex. 512, 83 S.W.2d 610 (1935). *Texas Company v. Stephens*, 100 Tex. 628, 103 S.W. 481 (1907); *Hurt v. Cooper, supra; County of Harris v. Shepperd, supra. See also*, 4 T. Cooley, *Law of Taxation* § 1784 (4th ed. 1924); Note, 14 Texas L.Rev. 278 (1936).

Appellant relies upon the case of *Conlen Grain & Mercantile, Inc. v. Texas Grain Sorghum Producers Board, supra*, where the court stated that it was no basis for holding a statutory charge to be a regulatory fee, instead of a tax, that the revenue was not paid into the State Treasury, did not become part of the general revenues of the State, and was not subject to appropriation by the Legislature. Moreover, the court said as follows:

A tax is a burden or charge imposed by the legislative power of the state upon persons or property to raise money for public purposes. See *Clegg v. State*, 42 Tex. 605; 1 Cooley on Taxation, 4th ed. 1924, § 1. When the state in the exercise of its power to raise revenue for public

purposes exacts an enforced contribution of money to be expended by an agency of the state, the exaction must be regarded as a tax even though the taxpayer may obtain a refund upon request. Provision for refunding assessments . . . does not alter the fact that the payments are imposed upon and extracted from producers by governmental authority for a public purpose. The power of the state is used to deprive the producer of money, or the use of his money, for at least the time necessary to process an application for refund. It also appears that the primary purpose of the assessment is to raise revenue. We hold that assessments under Article 55c are taxes. 519 S.W.2d at 623. Appellant contends, almost persuasively, that even though the charge is exacted primarily for regulatory purposes, it is nevertheless exacted for that *public* purpose and is, therefore, a "tax" within the meaning of Article VIII, Section 1 of the Constitution of Texas, 1876, and subject to that article's limitations of uniformity and equality. We believe, however, we would need a more specific declaration by the Supreme Court, overruling the traditional distinction drawn between an occupation tax and a regulatory fee, before we would be justified in holding the charge assessed by subdivision (a) to be a "tax" subject to the "equal and uniform" limitations of the Constitution. It is true, of course, that any charge for a public purpose, including regulation, is a "tax" in the general sense of the word; nevertheless, when levied primarily for a regulatory purpose, as opposed to a primary purpose of raising revenue, our Supreme Court has traditionally held it to be a special kind of "tax" requiring a different evaluation and measurement as to its constitutionality, and to this we now turn.

Subdivision (a) distinguishes between corporate HMOs and HMOs of any other organizational character, imposing upon the former the entire cost of regulation. Of the general class of HMOs, one sub-class pays the entire cost of regulation applicable to all HMOs and another sub-class is immune from such charges. The statute thus invokes, on its face, an inquiry whether the

distinction made between the two subclasses bears some reasonable and just relation to the subject matter and to the purpose for which the charge is exacted. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1936); *Dancetown, USA, Inc. v. State*, 439 S.W.2d 333 (Tex.1969); *T. Cooley, supra*, § 1685 n. 5. Moreover, in such inquiry the distinction made must be construed strictly in favor of the citizen and against the government. Omissions may not be supplied by the courts. *Id.* § 1694.

The State may classify natural persons, partnerships, organizations and corporations *according to their businesses* and may apply different treatment to those who belong to different classes, merely because they are engaged in different businesses. *Texas Company v. Stevens, supra; Hurt v. Cooper, supra; American Transfer & Storage Co. v. Bullock*, 525 S.W.2d 918 (Tex.Civ.App.—Austin 1975, writ ref'd). So long as there is a substantial basis for the classification, it is not unreasonable, arbitrary or capricious and the legislature acts within the legitimate scope of its authority and within the constitution. *Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807 (1959). The same considerations are applied to statutes which dictate different treatment within a general class, as between two or more sub-classes. In order for the statute to be valid, all persons or things within a particular class, a sub-class, or persons similarly situated, must be affected alike by the statute or the different treatment must be justified upon some reasonable basis. *Taylor v. State*, 513 S.W.2d 549 (Tex.Cr.App. 1974); *Fort Worth & Denver City Railway Co. v. Welch*, 183 S.W.2d 730 (Tex.Civ.App. —Amarillo 1944, writ ref'd); *Wood v. Wood, supra; Reed v. City of Waco, supra.*

We believe the distinction drawn by subdivision (a), as between corporate and noncorporate HMOs, is without a substantial basis because their business is the same irrespective of the form in which it is conducted. Only in this section of the statute are corporate and non-corporate HMOs and

their businesses treated differently for regulatory purposes; in every other respect, they and their businesses are treated substantially the same for regulatory purposes. One kind of HMO is simply charged the cost of regulation and all other HMOs are made exempt from such charges. The business of both corporate and non-corporate HMOs is the same and they are treated substantially the same under the Act, except for the charges imposed.[9] We therefore find in the nature of the business conducted no reasonable basis for the discrimination.

■■■ The State may also classify natural persons, partnerships, and corporations according to *the form of organization* in which they do business. And when it comes to *taxes* on corporations and taxes on individuals, great leeway is permitted the State under the equal protection guarantee. *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Lawrence v. State Tax Commission,* 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932). *See generally Sid Westheimer Co. v. Piner,* 263 S.W. 578 (Tex.Com.App.— 1924, judgmt adopted). In *Flint v. Stone Tracy Co.,* 220 U.S. 117, 31 S.Ct. 342, 55 L.Ed. 389 (1911), the Supreme Court of the United States recognized the inherent difference between the corporate form of doing business and an individual's carrying on the same business, stating:

The thing taxed is not the mere dealing in merchandise, in which the actual transaction may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. 220 U.S. at 161–62, 31 S.Ct. at 353.

In the present case, appellees offer the same justification as to charges against corporate and non-corporate HMOs for *regulatory* purposes, citing the proposition that a corporation has a perpetual existence as a legal entity and the other advantages inherent in that form of doing business as an HMO. We disagree. In our own State, of course, we tax, via the franchise tax, the privilege of conducting business within the State in a corporate form. Tex.Tax.-Gen. Ann. art. 12.01–12.22 (Vernon 1969); *General Dynamics Corp. v. Bullock,* 547 S.W.2d 255 (Tex.1976), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 717, 54 L.Ed.2d 751 (1978). As we noted above however, subdivision (a) is not referrable to the taxing power of the sovereign but to its police power. While the corporate and non-corporate distinction in this subsection is not to be addressed under the "uniform and equal" provision of the State constitution, it is still subject to the equal protection and equal immunities provisions of both the State and Federal constitutions. Given the *regulatory purpose* of

**9.** Article 20A.02 contains several definitions of terms used in the Act. For example, an HMO is *defined* by the nature of its business: it is "any person who arranges for or provides a health care plan to enrollees on a prepaid basis." (subdivision j). The word "person" is so defined as to include a corporation as well as a natural person. (subdivision 1). HMOs of whatever form of organization receive identical certificates of authority to conduct their business on making substantially the same showing as to relevant facts. Articles 20A.03, .04, .05. They have the same powers, regardless of their form of organization, except that a corporate HMO has such additional powers as are granted by law or by their organizational documents, so long as such additional powers are not in conflict with the Act. Article 20A.06. They have the same fiduciary responsibility irrespective of their form of organization. Article 20A.08. The same things are prohibited

irrespective of their form of organization. Article 20A.14. They have the same duties under the Act generally. We find nothing in the act suggesting that the purpose of regulation is different with respect to corporate and non-corporate HMOs. Where a different regulatory aspect is provided for corporate HMOs, as for example the requirement that their application for a certificate of authority be accompanied by their organizational documents, the difference is manifestly to bring the corporate HMO completely within the common scheme of regulatory treatment, insofar as the corporation wishes to conduct the business of an HMO as defined in Article 20A.02(j). See *Bullock v. A. B. C. Interstate Theatres, Inc.,* 557 S.W.2d 337 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.), upholding a difference in taxation on the basis of a difference in the principle business of the taxpayers. We see no such difference in the present case.

the entire statute and subsection (a) in particular, we find no reasonable basis for the different regulatory treatment of corporate HMOs, the necessity and justification for regulation being precisely the same, and being, in fact, substantially the same for all purposes apart from who shall pay the cost of regulation. Appellant's corporate form is no advantage for *regulatory* purposes and the corporate privilege is taxed under another subdivision. Thus, the different treatment is not reasonably related to any *regulatory* purpose. We hold subdivision (a) to be unconstitutional.[10]

 The statute in question is not ambiguous; it is as plain as words can make it. We must say, then, that the Legislature intended to charge corporate HMOs only, as it literally did. There is no room for interpretation. *Calvert v. British-American Oil Production Co.*, 397 S.W.2d 839 (Tex.1965). Moreover, the fact that the Commissioner, by his rule, assessed an identical charge against the only non-corporate HMO cannot cure the constitutional defect apparent on the face of the statute. *See Newsom v. Starkey*, 572 S.W.2d 29 (Tex.Civ.App.—Dallas 1978, no writ), where the court declared a garnishment statute unconstitutional, void and insufficient to justify any acts performed under it, and held that a garnishee who received actual notice and a hearing could nevertheless challenge the statute's constitutionality on the basis that it did not expressly require these protections. A "court cannot remedy a constitu-

tional defect in a statute by supplying the procedure that the statute fails to give." 572 S.W.2d at 30.

## ARTICLE 20A.33, SUBDIVISION B

 We believe, in contrast, that article 20A.33(b), is not subject to appellant's complaint. We hold that this part of the statute does, indeed, impose a charge properly referrable to the taxing power of the sovereign and, in fact, provides a mechanism to achieve equality and uniformity in the taxing of the gross "premiums" received by HMOs and other insurance companies similarly taxed under Tex.Rev.Civ.Stat.Ann. arts. 7064a and 4769 (which tax corporate HMOs would otherwise escape, though they are statutorily of the same class). The sums derived from this charge enhance the State's general revenues. We hold the privilege of conducting the business of an HMO in corporate form reasonably justifies the different tax treatment imposed by subsection (b). *General Dynamics Corp. v. Bullock, supra; Lehnhausen v. Lake Shore Auto Parts Co., supra; Lawrence v. State Tax Commission, supra.*

## EQUITABLE ESTOPPEL

 Appellees contend appellant may not complain of any unreasonable discrimination authorized by article 20A.33 because appellant derives therefrom its authority to operate as an HMO and has retained the benefits that attend such operation. *Fahey v. Mallonee*, 332 U.S. 245, 67

---

**10.** The constitutional guarantee of equal protection applies to corporations as well as to individuals. *Grosjean v. American Press Co., Inc.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). Equal treatment of persons similarly situated is required of public officials and agencies as well as legislative bodies. *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). Any classification attempted by the State "must be reasonable, not arbitrary, and must rest upon some ground of difference having *a fair and substantial relation to the object of the legislation*, so that all persons similarly circumstanced shall be treated alike." (emphasis added). *F. S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 614 L.Ed. 989 (1920). In the present case, the differences between cor-

porate and non-corporate HMOs are obvious and the advantages of the corporate form of doing business are admitted. These differences and advantages are, however, *not reasonably related to the regulatory purposes of the charge exacted by subdivision (a) of the statute*, the corporate and other HMOs being treated substantially alike for those purposes. *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison*, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937). Absent a reasonable relationship between the purpose of the charge and the different treatment, there is no rational, and, hence, no constitutional basis for any different treatment. *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *McGinnis v. Royster*, 410 U.S. 263, 93 S.Ct. 1055, 35 L.Ed.2d 282 (1973).

S.Ct. 1552, 91 L.Ed. 2030 (1947); *Beneficial Finance Company of Midland v. Miskell*, 424 S.W.2d 482 (Tex.Civ.App.—Austin 1968, writ ref'd n. r. e.). This contention need not detain us. The rule of *Fahey* rests upon the doctrine of equitable estoppel. The rule does not apply where specific statutory authorization exists for challenging that part of a statute complained of as unconstitutional. *Oklahoma v. United States Civil Service Commission*, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947). The refund suit brought by appellant here is specifically authorized by Tex.Tax.-Gen. Ann. art. 1.05.

In accordance with our holdings, we reverse the judgment of the trial court that appellant take nothing with respect to appellant's claim for refund of $71,818.48 paid the Comptroller under subdivision (a) of article 20A.33; and, we remand the cause for entry of a judgment in that amount together with any interest provided by law thereon. With respect to appellant's claim for refund of sums paid the Comptroller under subdivision (b) of article 20A.33, we affirm the judgment of the trial court that appellant take nothing with respect to the $18,809.41 paid under that subdivision.

Affirmed in Part; Reversed in Part and Remanded in Part.