# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00753-CV

**Susan Combs, in her official capacity as Texas Comptroller, and
Greg Abbott, in his official capacity as Texas Attorney General, Appellants**

**v.**

**Texas Small Tobacco Coalition and Global Tobacco, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-13-002414, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

After the legislature enacted subchapter V of the Texas Health & Safety Code, entitled, "Fee on Cigarettes and Cigarette Tobacco Products Manufactured by Certain Companies," appellees Texas Small Tobacco Coalition and Global Tobacco, Inc. (Small Tobacco) filed a suit for declaratory and injunctive relief, alleging that the tax imposed by subchapter V is unconstitutional.[1] Appellants Susan Combs, in her official capacity as Texas Comptroller, and Greg Abbott, in his official capacity as Texas Attorney General, (the State) filed a plea to the jurisdiction and a motion for summary

---

[1] Subchapter V states that it assesses a "fee" on certain tobacco products. The parties approach the case as raising taxation issues, and we will follow suit, viewing the assessment as a tax and not a fee. *See TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns*, 397 S.W.3d 173, 175 n.3 (Tex. 2013) (legislature's decision to label assessment as fee not tax is not binding on courts; "A charge is a fee rather than a tax when the primary purpose of the fee is to support a regulatory regime governing those who pay the fee."); *Lowenberg v. City of Dallas*, 261 S.W.3d 54, 57-58 (Tex. 2008) (quoting *Hurt v. Cooper*, 110 S.W.2d 896, 899 (Tex. 1937)) (whether assessment is tax depends not on label given by legislature but on whether primary purpose is to raise revenue).

judgment, and Small Tobacco filed its own motion for summary judgment. The trial court denied the State's plea to the jurisdiction and motion for summary judgment, granted Small Tobacco's motion for summary judgment, found that the tax is unconstitutional, and enjoined the State from assessing or collecting the tax. We affirm the trial court's order.

**Factual Background**

In 1996, the State sued four major tobacco companies (Big Tobacco)[2] for antitrust violations, deceptive advertising, and marketing campaigns aimed at children. In 1997 and 1998, Big Tobacco settled with the State, agreeing to change the way they advertised and marketed their products and to pay billions of dollars to the State in exchange for a settlement of the State's claims and a release from any future claims the State might have against Big Tobacco.[3]

The 1998 Comprehensive Settlement Agreement and Release (the 1998 Settlement) provided a schedule of payments to be made to various entities and stated that the payments were intended as "reimbursement for public health expenditures of the State" and to satisfy the State's claims "for damages incurred by the State in the year of payment or earlier years," including Medicaid expenditures and punitive damages. The 1998 Settlement stated that payments made in 1998 "constitute reimbursement for public health expenditures" and that "[a]ll other payments . . . are in satisfaction of all of the State of Texas's claims for damages incurred by the State in the year

---

[2] The companies sued were Phillip Morris Companies; RJR Nabisco Holdings, the parent company for R.J. Reynolds Tobacco; BAT Industries PLC, the parent company of Brown & Williamson Tobacco; and the Loews Corporation, parent company of Lorillard Tobacco. At the time, those four companies were responsible for more than ninety-five percent of the cigarettes sold in this country.

[3] More than forty states filed suit, and most of them joined a master settlement agreement. Texas and several others negotiated their own separate agreements.

of payment or earlier years, including those for reimbursement of Medicaid expenditures and punitive damages." The agreement then listed seven specific payments, such as $351 million to be paid to the State's general revenue fund for funding the Children's Health Insurance Program and various anti-smoking programs, and stated that "[a]ll remaining amounts, including any amounts due to be paid by Settling Defendants after December 31, 1998, are to be allocated to the general revenue fund of the State of Texas to be used for such purposes as the State of Texas may determine." Big Tobacco agreed to make large yearly payments based on the companies' various market shares, and those payments were to increase or decrease "in accordance with decreases or increases in volume of domestic tobacco product volume sales."

In 2013, the legislature passed House Bill 3536 and enacted subchapter V of chapter 161 of the health and safety code. *See* Act of May 23, 2013, 83d Leg., R.S., ch. 1305, § 1, 2013 Tex. Gen. Laws 3331, 3331-36 (codified at Tex. Health & Safety Code §§ 161.601-.614 (effective September 1, 2013)). Subchapter V, entitled, "Fee on Cigarettes and Cigarette Tobacco Products Manufactured by Certain Companies," applies only to tobacco companies that did not sign the 1997 and 1998 settlement agreements ("non-settling manufacturers") and is intended to:

(1) recover health care costs to the state imposed by non-settling manufacturers;

(2) prevent non-settling manufacturers from undermining this state's policy of reducing underage smoking by offering cigarettes and cigarette tobacco products at prices that are substantially below the prices of cigarettes and cigarette tobacco products of other manufacturers;

(3) protect the tobacco settlement agreement and funding, which has been reduced because of the growth of sales of non-settling manufacturer cigarettes and cigarette tobacco products, for programs that are funded wholly or partly by payments to this state under the tobacco settlement agreement and recoup for this state settlement payment revenue lost because of sales of non-settling manufacturer cigarettes and cigarette tobacco products;

3

(4) ensure evenhanded treatment of manufacturers and further protect the tobacco settlement agreement and funding by imposing a partial payment obligation on non-settling manufacturers that already make payments on Texas sales under the master settlement agreement until a credit amendment to that agreement that will provide those manufacturers with a credit for payments to Texas is effective; and

(5) provide funding for any purpose the legislature determines.

Tex. Health & Safety Code § 161.601.

Under subchapter V, a 2.75 cent "fee" is imposed on each cigarette or 0.09 ounce of tobacco product made by a non-settling manufacturer, for a total of 55 cents added to the price of each 20-cigarette pack, with the fee to increase each year. *Id.* §§ 161.603, .604.[4] Subchapter V does not release non-settling manufacturers from liability, although it does provide that all fees paid by a manufacturer "shall apply on a dollar for dollar basis to reduce any judgment or settlement on a released claim brought against the manufacturer that made the payment." *Id.* § 161.612.

Small Tobacco sued for declaratory and injunctive relief, arguing that the fee imposed by subchapter V was in fact a tax that violated the Equal and Uniform Clause of the Texas Constitution and the Equal Protection Clause and the Due Process Clause of the United States Constitution. The State filed a plea to the jurisdiction asserting that the Texas Small Tobacco Coalition[5] lacked standing to bring a taxpayer suit under chapter 112 of the tax code, that section

---

[4] Tobacco companies who joined the multi-state master agreement, other than original signatories to that agreement or parties to the State's 1997 or 1998 settlements, pay a lower rate of 0.75 cents per cigarette or tobacco product. Tex. Health & Safety Code § 161.604(c).

[5] The Texas Small Tobacco Coalition is a trade association made up of smaller tobacco manufacturers, distributors, and retailers. Most of the coalition's members came into existence after 1998, although Global Tobacco, Inc. has been in existence since before the settlement agreements were negotiated.

112.108 of the tax code barred a suit under the Uniform Declaratory Judgments Act,[6] and that Small Tobacco had not pled a viable constitutional claim so as to overcome the State's sovereign immunity. Both Small Tobacco and the State filed motions for summary judgment. After a hearing, the trial court signed an order denying the State's plea to the jurisdiction and motion for summary judgment and granting Small Tobacco's motion for summary judgment. The trial court found that subchapter V is unconstitutional "in its entirety" and permanently enjoined the State from assessing, collecting, or enforcing the tax. The State appealed.

## Scope Of Our Review

Initially, we note that in its statement of its arguments, the State contends only that the trial court erred in denying the State's plea to the jurisdiction, asserting (1) that Small Tobacco failed to plead valid claims that subchapter V violates the Equal and Uniform Clause of the Texas Constitution or the Equal Protection and Due Process Clauses of the federal constitution and (2) that the Texas Small Tobacco Coalition lacks standing to bring the suit. In its prayer, the State asks us to reverse the trial court's judgment and "render judgment dismissing plaintiffs' claims for lack of subject-matter jurisdiction." Although the State's statements of argument and prayer present a very limited question, the parties present detailed argument about the overall merits of Small Tobacco's underlying claims and the trial court's ruling of unconstitutionality. Because the parties' actual arguments concern the propriety of the trial court's finding that the statutes are unconstitutional, we will not limit our discussion to the trial court's denial of the State's plea to

---

[6] *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011.

the jurisdiction. *See Majeed v. Hussain*, No. 03-08-00679-CV, 2010 WL 4137472, at \*7-9 (Tex. App.—Austin Oct. 22, 2010, no pet.) (mem. op.) (omission of prayer for remand in brief did not waive appellant's entitlement to or court's power to award remand).

**Standing**

In its third issue, the State asserts that the Texas Small Tobacco Coalition lacks associational standing to bring the underlying suit on behalf of its members. We disagree.

An association has standing to sue on behalf of its members if: the members themselves have standing to sue in their own right[7]; the interests the association is seeking to protect are germane to its purpose; and participation of the individual members in the lawsuit is not necessary, meaning the pleadings and record show that neither the claim asserted nor the relief sought require the individual members to participate in the suit. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447-48 (Tex. 1993) (quoting *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). When, as here, an association seeks injunctive or declaratory relief, as opposed to damages requiring a showing of individualized lost profits, the relief will

---

[7] "[I]t is well-recognized that a suit seeking a declaratory judgment that a state agent is acting pursuant to an unconstitutional law is not barred by sovereign immunity." *Scott v. Alphonso Crutch Life Support Ctr.*, 392 S.W.3d 132, 137 (Tex. App.—Austin 2009, pet. denied) (mem. op.) (citing *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.) ("when a party's rights have been violated by the unlawful acts of a state official or by a state agent acting pursuant to an unconstitutional law, the suit is not an action against the State requiring the State's consent")); *see Texas Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 336 (Tex. App.—Austin 2009, pet. denied) ("Texas law is clear that private parties may seek declaratory relief against state officials who are acting pursuant to an allegedly unconstitutional law," and it is "well recognized that declaratory relief is the proper remedy when challenging the constitutionality of a statute and that plaintiffs are not required to obtain the State's consent before suing for declaratory judgment").

inure to the benefit of the association's members and does not require the participation of each

individual member. *Id.* at 448 (quoting *Hunt*, 432 U.S. at 343).

The State contends that only an individual taxpayer has standing to sue under section

112.108 of the tax code and asserts that "lawsuits by associations of taxpayers . . . are forbidden."[8]

However, we have held that section 112.108 is unconstitutional, and that holding has not been

overruled by the Texas Supreme Court. *See Richmont Aviation, Inc. v. Combs*, No. 03-11-00486-

CV, 2013 WL 5272834, at *5-6 (Tex. App.—Austin Sept. 12, 2013, pet. filed) (mem. op.); *Rylander*

*v. Bandag Licensing Corp.*, 18 S.W.3d 296, 304-05 (Tex. App.—Austin 2000, pet. denied).[9] Further,

none of the statutes cited by the State forbids an association from bringing a lawsuit on behalf of its

---

[8] Section 112.108 provides:

Except for a restraining order or injunction issued as provided by this subchapter, a court may not issue a restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due, provided, however, that after filing an oath of inability to pay the tax, penalties, and interest due, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts. The court may grant such relief as may be reasonably required by the circumstances. A grant of declaratory relief against the state or a state agency shall not entitle the winning party to recover attorney fees.

Tex. Tax Code § 112.108.

[9] *See also FM Express Food Mart, Inc. v Combs*, No. 03-12-00144-CV, 2013 WL 1149551, at *6 n.6 (Tex. App.—Austin Mar. 15, 2013, no pet.) (mem. op.) (noting holding in *Bandag* that section 112.108 was unconstitutional); *Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 WL 1412171, at *6 n.6 (Tex. App.—Austin June 16, 2005, no pet.) (mem. op.) ("the Comptroller concedes on appeal that this Court held section 112.108 unconstitutional").

members to argue that a tax statute is unconstitutional, and we recently reaffirmed that a suit for declaratory relief challenging a tax statute's constitutionality can be brought by a trade association. *Texas Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 795 & n.3 (Tex. App.—Austin 2014, pet. filed). We overrule the State's third issue.

## Equal and Uniform Clause

Although phrased in terms of whether Small Tobacco pled a valid constitutional claim, the State argues in its first issue that subchapter V's fee does not violate Texas's Equal and Uniform Clause because the legislature's decision to assess a fee against non-settling manufacturers and not against settling manufacturers was based on a reasonable distinction.

In Texas, taxation must be equal and uniform. Tex. Const. art. VIII, §§ 1, 2. Although the legislature may "pursue policy goals through tax legislation," those goals must be "related to the taxation." *In re Nestle USA, Inc.*, 387 S.W.3d 610, 622 (Tex. 2012) (orig. proceeding). The legislature has the discretion to make classifications in levying sales and occupation taxes, and there is a strong presumption in favor of a tax statute's constitutionality. *Id.* at 623 (quoting *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex. 1989), and citing 2 Wade Newhouse, *Constitutional Uniformity and Equality in State Taxation* 1723 (2d ed. 1984)). Exact equality and uniformity in taxation is unattainable, and the uniformity that is required is "uniformity within classes." *Id.* at 620 (quoting *Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 935 (Tex. 1996)). In reviewing tax classifications, we will uphold a tax statute that "treat[s] differently those engaged in the same business so long as a reasonable basis justifies the disparate treatment." *American Home Assurance v. Texas Dep't of Ins.*, 907 S.W.2d 90, 97 (Tex. App.—Austin 1995, writ denied). We look to the

8

nature of the business in evaluating a classification's reasonableness, and a "slight difference in the subject matter taxed justifies a separate classification." *Id*. at 97-98.[10] Thus, our focus must be on the subject of the tax, not the entity being taxed. *See id.*; *Prudential Health Care Plan, Inc. v. Commissioner of Ins.*, 626 S.W.2d 822, 830 (Tex. App.—Austin 1981, writ ref'd n.r.e.) (legislature may classify people, corporations, and organizations and may treat classes differently "merely because they are engaged in different businesses").

Small Tobacco's members make cigarettes and other tobacco products, as do the Big Tobacco companies. There is no indication in this record that the taxed subject matter, cigarettes or "cigarette tobacco products,"[11] *see* Tex. Health & Safety Code §§ 161.603, .604, differs even slightly when manufactured by Small Tobacco versus Big Tobacco. The only justification proffered by the legislature for making a distinction between the products is that Big Tobacco and, to a lesser degree, subsequent participating manufacturers, entered into the 1997 and 1998 settlement agreements. *See id*. § 161.601. Subchapter V was in part enacted to protect the settlement agreements and funding for the various programs that receive money from Big Tobacco and also is an apparent

---

[10] *See also Dancetown, U.S.A., Inc. v. State*, 439 S.W.2d 333, 336 (Tex. 1969) ("Differences in the commodities sold or services rendered are generally regarded as a proper basis for classification in the absence of any showing to the contrary."); *Hurt*, 110 S.W.2d at 900-01 ("merchants may be divided into classes and the classes taxed in different amounts and according to different standards," and "[m]ere differences in methods of conducting businesses have long been recognized in this state as sufficient to support the classification of merchants for the purpose of levying occupation taxes"); *Texas Co. v. Stephens*, 103 S.W. 481, 485 (Tex. 1907) ("The courts, under the provisions relied on, can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the businesses classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature.").

[11] "Cigarette tobacco products" are roll-your-own tobacco or tobacco that is suitable for use in cigarettes and is likely to be used in such a way. Tex. Health & Safety Code § 161.602(3).

9

attempt to protect Big Tobacco from losing market share to Small Tobacco. *See id.* § 161.601(3) (subchapter V is intended to "protect the tobacco settlement agreement and funding, which has been reduced because of the growth of sales of non-settling manufacturer cigarettes and cigarette tobacco products"). Protecting one company's market share over another's does not justify the unequal treatment of identical products. Nor do the other, more laudable purposes of subchapter V. Few would take issue with goals of reducing underage smoking or recovering costs of medical care related to smoking. However, imposing a tax on only one class of identical products is not equal and uniform under Texas law and cannot be upheld. *See American Home Assurance*, 907 S.W.2d at 97-98; *Prudential Health Care Plan*, 626 S.W.2d at 830.

Further, Big Tobacco, in entering into the settlement agreements, obtained a release of past and future claims, including claims of serious misconduct, claims that have not been leveled by the State at Small Tobacco.[12] Small Tobacco obtains no similar release in exchange for the taxes paid, although a non-participating manufacturer is to receive a dollar-for-dollar credit in the event it is found liable for claims brought against the manufacturer. And, unlike in states with escrow

---

[12] The State asserts that the settlement agreement's ongoing annual payments are "not tied to prior bad acts: They are tied to big tobacco's future sales, and calculated to offset the State's ongoing health care costs." However, the State does not cite to any portion of the settlement agreements that supports that statement. Instead, the 1998 Settlement stated that payments made in 1998 "constitute[d] reimbursement for public health expenditures of the State of Texas" and that "[a]ll other payments made by Settling Defendants pursuant to this Settlement Agreement are in satisfaction of all of the State of Texas's claims for damages incurred . . . in the year of payment *or earlier years*, including those for reimbursement of Medicaid expenditures and *punitive damages*." (Emphases added.) After setting out seven specific sums to be paid to various entities, the agreement then stated that "[a]ll remaining amounts, including any amounts due to be paid by Settling Defendants after December 31, 1998, are to be allocated to the general revenue fund of the State of Texas to be used for such purposes as the State of Texas may determine."

10

laws, an alternative to taxation discussed in more detail below, here, non-settling manufacturers like Small Tobacco's members do not earn interest and have no opportunity to regain any of the funds that are not used to satisfy claims leveled against the companies by the State. Instead, the tax money goes into the State's general revenue coffers for use in whatever way the State sees fit. *Id.* § 161.601(5) (tax intended to "provide funding for any purpose the legislature determines").

Finally, we address the State's assertion that, should we agree that subchapter V is unconstitutional, we "must also declare unreasonable the judgment of fifty[-]four other legislatures" and the "reasoning of every court of appeals in the nation to consider the question." We disagree. Only two other states, Minnesota and Mississippi, have assessed a per-cigarette tax on non-settling manufacturers. The other states established "escrow statutes" that require tobacco manufacturers other than Big Tobacco to either join the master settlement agreement as a subsequent participating manufacturer or remain a non-participating manufacturer. *See, e.g.*, *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 63 (2nd Cir. 2007). In escrow-statute states, non-participating manufacturers must make annual deposits into escrow accounts, creating "a pool of funds from which settling states may secure damage awards from [non-participating manufacturers] for any successful cigarette-related claims." *Id*. After twenty-five years, funds remaining in the escrow accounts, along with any earned interest, are returned to the non-participating manufacturers. *Id.*; *Commonwealth ex rel. Fisher v. Jash Int'l, Inc.*, 847 A.2d 125, 128 (Pa. Commw. Ct. 2004); *see* Tenn. Code § 47-31-103(a)(2)(D) ("[a] tobacco product manufacturer that places funds into escrow . . . shall receive the interest or other appreciation on such funds as earned"; escrow funds will be released to pay "judgment or settlement on any released claim brought against such tobacco product

11

manufacturer by the state or any releasing party located or residing in the state," if manufacturer can show it overpaid, or after twenty-five years). Such deposits have been upheld against constitutional challenges. *See, e.g.*, *Star Scientific Inc. v. Beales*, 278 F.3d 339, 361-62 (4th Cir. 2002), *cert. denied*, 537 U.S. 818 (2002). Due to the differences between the tax in question here and the escrow system established by the majority of the states, a finding that subchapter V is unconstitutional casts no shadow on the "judgment of fifty[-]four other legislatures" or the reasoning of every other "court of appeals in the nation."

As for Mississippi and Minnesota, the constitutionality of Mississippi's tax statute has apparently not been challenged, and Minnesota applies a "rational basis" test to its tax statutes. *See Council of Indep. Tobacco Mfrs. of Am. v. Minnesota*, 713 N.W.2d 300, 308-11 (Minn. 2006), *cert. denied*, 549 U.S. 1052 (2006) (quoting *Miller Brewing Co. v. Minnesota*, 284 N.W.2d 353, 356 (Minn. 1979)) (reviewing state "Uniformity Clause challenge under the rational basis standard," stating that "*any* legitimate purpose can support the classifications created by the statute," and asking whether "the differences between the taxpayers distinguished by the statute provide a 'natural and reasonable basis' for separate classifications"). Texas's constitutional standard is more stringent. *See* Tex. Const. art. VIII, §§ 1, 2 (taxation must be equal and uniform). As the supreme court has stated, "tax classifications must not only be rational but must attempt to group similar things and differentiate dissimilar things." *In re Nestle USA*, 387 S.W.3d at 622. Thus, the Texas Constitution requires more than that a tax classification be merely rational, and Minnesota's rational-basis analysis is not applicable here.

We hold that the trial court did not err in determining that subchapter V's tax violates Texas's Equal and Uniform Clause. We overrule the State's first issue.

12

## Conclusion

Having determined that subchapter V violates the Texas Constitution, we need not examine whether it also violates the federal constitution. We affirm the trial court's judgment.

As for Small Tobacco's motion and supplemental motion for sanctions, the State provided this Court with packs of grape-flavored "cigars" while representing them to be "cigarettes," and certain of its assertions and allegations in its briefing were unsupported by factual references. However, we do not believe those actions rose to a level that would justify our imposing sanctions in the form of requiring the State to pay Small Tobacco's appellate attorney's fees.[13] We therefore deny Small Tobacco's motions for sanctions.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: August 15, 2014

_____

[13] In its initial brief and its reply brief, the State provides two full-page discussions about Small Tobacco's alleged manufacture and sale of flavored cigarettes, allegations Small Tobacco denies, noting that federal law bans the sale of "flavored cigarettes" but not "flavored cigars." The State also provided this Court, as an exhibit to its reply brief, three packs of what it characterizes as "grape-flavored cigarettes" but which are labeled as flavored "cigars." Despite placing some emphasis on its allegations related to flavored cigarettes, the State concurs in its reply brief that Small Tobacco's "sale of flavored cigarettes is not relevant to the elements of their claim, of course." In asking us to deny Small Tobacco's motions for sanctions, it asks us to take judicial notice of the "legislative fact" that Small Tobacco sells "flavored cigarettes" but then argues that it never "said that the tobacco companies [Small Tobacco] are federal lawbreakers. It said only that they sell flavored cigarettes, and indeed they do." For the State to emphasize disputed facts not in the record and make allegations that imply a violation of federal law, while agreeing that the issue is not relevant to the case, raises some concerns for this Court.