# Joe A. Wheeler et al v. City of Brownsville.

No. A-1989. Decided April 20, 1949.
Rehearing overruled May 18, 1949.
(220 S. W., 2d Series, 457.)

*E. T. Yates,* of Brownsville for petitioners.

The Court of Civil Appeals committed an error of substantive law in holding that the article of the statute under consideration granted special privileges and immunities to said taxpayers by reason of the city paying the pro rata share of the flat rate and bond tax on the annexed lands, and in holding that the mere payment of such bond tax by the city for the life of the bond issue, owing by the water district, is unconstitutional. City of Fort Worth v. State, 186 S. W. (2d) 323; City of Pelly v. Harris

County Water Control and Imp. Dist., No. 7, 145 Texas 443, 198 S. W. (2d) 450; City of Houston v. Todd, 268 S. W. 838.

*Jack Weich* and *R. A. Hightower,* both of Brownsville, for respondent.

The holding of the Court of Civil Appeals herein, based on the facts herein, is strictly in accordance with the law of this State and there is no conflict between such holding and any prior decision of its own or another court of Civil Appeals or the Supreme Court. San Antonio & A. P. Ry. Co. v. State, 128 Texas 33, 95 S. W. (2d) 690; Simmons v. Lightfoot, 105 Texas 212, 146 S. W. 871; Morris v. City of Waco, 57 Texas 635.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

In December, 1930, the City of Brownsville, a home-rule city, by ordinance passed under section 3 of article 1182a, V. A. C. S., and by charter amendment subsequently adopted on August 12, 1931, extended the city boundaries by annexing 268 acres of adjacent land lying in Water Control and Improvement District No. 7, situated, organized and operating in Cameron county under the conservation laws of the state, particularly section 59, article XVI of the state constitution. The matters voted on, as stated pro and con on the ballots pursuant to the ordinance, are embodied in the following:

"* * * extending the city limits and the annexation of additional territory and assumption by the city of all bonded indebtedness and flat rates owing to such water control and improvement district on the territory to be annexed, and the levying and collecting of a tax on all property within the city limits sufficient to pay off and discharge said bonded indebtedness and flat rates."

The majority of the voters both in the city and in the 268 acres cast their ballots in favor of annexation and the election result was declared accordingly. Continuously since annexation the added area has been treated as a part of the city. For the year 1931, and annually since, ad valorem taxes against the property in the annexed area have been regularly assessed at the same rate and on an equal basis with the taxes on all other property within the city. The water district has continued to exercise the powers and functions of a water control and improvement district over the annexed territory and has treated it as a part of the district, assessing ad valorem taxes and flat rate assessments (sometimes called maintenance taxes) for district purposes at the same rate and on the same basis with

taxes on the other property in the water district. At the time of annexation the city had a bonded indebtedness of some $2,000,-000 and the district had a bonded indebtedness of $175,000.

The city, as appears from the annexation proceedings, assumed payment of the district's bonded debt and flat rates resting on the area at the time of annexation; and for five or six successive years discharged the obligation assumed. Then the city, having concluded that section 3 of article 1182a is unconstitutional and void, discontinued paying the water district taxes, collected the city taxes from the area, and retained same; and filed this suit in an effort to lawfully obviate any necessity for further payments to the district. It was filed under the Uniform Declaratory Judgments Act, art. 2524-1, V. A. C. S., against Joe A. Wheeler, et al, who hold rights, titles and interest in lots or parcels of land lying within the annexed area of the city and within the water district.

The city alleged many constitutional grounds, subsequently to be discussed, as bases, respectively, for its conclusion with respect to the alleged invalidity and consequent nullity of its assumption, and prayed alternatively that in event of a holding by the Court unfavorable to these contentions, the Court then answer a series of inquiries formulated by the city to the end that the rights and legal obligations between the city, the defendants and the water district be declared with respect to taxation problems that might arise out of the annexation. The questions we deal with, however, involve the constitutionality and validity of section 3 of article 1182a, and ordinance 218 passed pursuant thereto, together with its requirements, particularly as they affect the agreement made by the city to pay the district taxes imposed upon it by virtue of the annexation proceedings.

The trial court in a trial without a jury rejected the city's contentions, upheld the validity of the statute and ordinance requirements, and proceedings thereunder, and rendered judgment for defendants. Upon appeal the Court of Civil Appeals declared the statute unconstitutional and the ordinance a nullity, reversed the judgment below, and rendered judgment for the city as prayed. 220 S. W. (2d) 452. The case is regularly before us for review by writ of error granted on the application of petitioners, Joe Wheeler et al.

Article 1182a provides, among other things, that in event the voting is favorable to annexation the city shall assume all of said bonded indebtedness and flat rates on the added terri-

tory due the "Irrigation District, Water Improvement District or Water Control and Improvement District, or either of them," and that it shall from thenceforth pay such bonded indebtedness and flat rates as same become due and payable. The concluding provision of section 3 is that no city annexing such territory shall be entitled to collect any taxes due it from the property owners therein until it pays the indebtedness and flat rates for the current year and presents to the property owners receipts showing payment by the city. The article carries no restriction upon the power of a city to tax property in the annexed area equally and uniformly with all other property in the city.

The Court of Civil Appeals, in stating one of its grounds for holding illegal the city's undertaking assumed pursuant to the article and ordinance referred to, says the annexed territory either enjoys the privilege of being in the water district without the payment of taxes assessed against other property in the district, or has the privilege of being in the city and paying only the difference between the city tax and the district tax; and further that if the district tax exceeds the city tax then the property owners in the added territory have the privilege of owning property in the city without the payment of any city tax, and have the additional privilege of the city's paying a part of the water district tax. The Court reasons on this premise that either the taxation in question is not equal and uniform, under Section 1, Article VIII of the state constitution; or that the effect of Section 3, Article 1182a, is to authorize a grant of special privileges and immunities to the property owners in the annexed territory violative of Section 17, Article I of the constitution.

■ It is the principles of taxation, and the rights and duties of those charged with administering the affairs of the municipality assuming the burden, that are involved primarily in this case. Before stating the rule regarding uniformity and equality of taxation it is pertinent to observe that it is not concerned with who shall become obligated to pay the tax by reason of the agreement to pay or who owns the property. The rule with respect to equality and uniformity is stated in San Antonio & A. P. Ry. Co. v. State, 128 Texas 33, 95 S. W. (2d) 680, as follows:

"So long as the tax for the payment of the bonds is uniformly levied on all taxable property *in the district which issues the bonds* and which bonds are to be paid by such tax, the constitutional requirement of the equality and uniformity is observed." (Emphasis added). 95 S. W. (2d) 688.

Not only is the rule given effect in Smithville Independent School District (Com. App.), 251 S. W. 209, Houston v. Gonzales Independent School District (Com. App.), 229 S. W. 467, and Norris v. City of Waco, 57 Texas 635; but the principles underlying the rule are made manifest. In the case last cited the rule was applied in levying and assessing the taxes; and it is clear from the following excerpt that inequities resulting from the aplication of the rule are not a ground for unconstitutionality:

"To hold that each person must receive the same benefit as another may from the expenditures of money raised by taxation would be to hold that the law required an impossibility, for, in the very nature of things, some persons will derive great pecuniary benefits from the expenditure of money for strictly public purposses than will others. In fact, some may receive no benefit whatever save such as results to them from the preservation of order, protection to property, and the general prosperity which results therefrom, while others may and will be directly benefited by the increased value of their property and increase to their business which results from the expenditure of money raised by taxation, for purposes in every respect strictly public."

Certainly a legislative adjustment of those inequities would involve no concern with the constitutional rule under consideration.

Article 1182a contains the legislative provisions made for remedying inequities that result from the annexation of water district territory under its terms. The meaning of section 3 of the article that "* * * no city thus annexing such territory shall be entitled to collect any taxes due it from the property owners within the territory annexed until said city shall pay such bonded indebtedness and flat rates for the current year same become due and payable," is not, as the Court of Civil Appeals holds, that tax levies were either changed or eliminated by the assumption agreement. The statement in the emergency clause to the effect that the amount of the district tax "shall be deducted" from that of the city taxes does not have the effect of limiting the quoted provision of the body of the act, which merely makes the city's payment of the water district taxes a condition precedent to its right to collect city taxes on that area. We hold that the requirements of the statutory provision discussed entails no violation of section 1 of article VIII of the constitution, as held by the Court of Civil Appeals.

■ Nor is the property within the annexed territory exempt

from taxation by either the water district or the city violative of Section 2 of Article VIII of the constitution providing that exemptions from taxation other than those specified shall be null and void. It does not follow from the fact that the city uses a part, or all, of the taxes collected from the annexed territory for city purposes that the territory has for this reason been exempted from taxation. An exemption results only when there is no obligation to pay, or when there is no tax bearing on the property. Such is not the case here. On the contrary the property of the added area is burdened with both taxes. Nor is there a remission of taxes, since no refund is made and neither taxing agency had released any property from unpaid taxes.

■ Article 1182a appears to have been designed by the legislature to remedy inequities that may exist when certain properties are annexed to a city. According to its provisions one taxing unit simply becomes obligated to pay to another unit, taxes which have been duly levied and assessed. It is stated in the caption of the act that the measure provides for "the adjustment upon a just and equitable basis of the bonded indebtedness of the territory annexed." A similar statement of purpose is contained in the emergency clause. This Court, speaking through Justice Stayton in the early case of Norris v. City of Waco, 57 Texas 635, at p. 641, said:

"* * * what property shall be embraced within a municipal corporation, and whether the same shall be taxed for municipal purposes, presents questions essentially political, which by the constitution are to be determined by the legislature, and an assumption by the judiciary of power to revise the action of the legislature in such respect would be a usurpation."

It is obvious that some character of benefit or privilege is conferred upon those residing within the area of the "common orbit" of the city and district when the city assumes payment of the district tax for which it has become obligated. Such a benefit, however, is not, as held by the Court of Civil Appeals, within the prohibition of article 1 of section 17, of the constitution providing that "* * * no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the legislature, or created under its authority shall be subject to the control thereof." In City of Houston v. Houston City Street Railway Company, 83 Texas 548, 19 S. W. 127, at p. 131, 29 Am. St. Rep. 679, this Court in one of the few opinions discussing the quoted provision of the constitution, says in deciding one of the questions presented:

"With the light before us at this time, we think that the better opinion is that this particular clause of the Constitution was intended to prohibit the Legislature from granting any 'special privilege or immunity' in such way or of such character as that it could not be subsequently annulled or declared forfeited for such causes as might be defined by law or condemned in the exercise of eminent domain (Cool. Const. Lim. Secs. 341-344); and it was further intended, that 'all privileges and franchises' granted by the Legislature or under its authority should at all times remain subject to legislative control and regulation."

Nothing in article 1182a indicates that the rights which accrue by virtue of its operation are not subject to forfeiture for such causes as may be defined by law, nor that the privilege, if it is a privilege, does not remain subject to the legislature's control and regulation. The statute is designed to remedy inequities resulting from annexing property already within the boundaries of the named quasi-municipal governmental agencies and is within the legislative purview. That the statute may operate inequitably in some instances is not a sufficient ground upon which to hold that in such instances it grants special uncontrollable privileges and immunities to those whom the equities favor. There is no more a grant of special privileges and immunities in the present case than there is in a situation such as that involved in Norris v. The City of Waco, supra, where property owners within the old city limits acquire the privilege of having a newly annexed area share the burden of an existing indebtedness.

The case of Fidelity Bldg. and Loan Ass'n. v. Thompson (Com. App.), 51 S. W. (2d) 578, cited by the Court of Civil Appeals in support of its holding, deals with a different problem. It was there contended that because section 17 of article I gave the legislature power to amend the charter of a private corporation, the legislature had the power also to effect a change in the vested rights between certain of its shareholders. It is not contended here that the City of Brownsville, or its citizens, have a vested right which is disturbed by article 1182a. The contention that an unconstitutional privilege is extended to the class deemed by the legislature to be equitably entitled to it, is overruled.

■ The city contends that taxes on property within its area included in the property within the annexed area are by article 1182a allocated to the payment of the private debts of the property owners in the added territory, such private debts being

the water district tax upon the annexed territory; and asserts this is in violation of section 3 of article VIII of the constitution providing that taxes shall be levied and collected by general laws and for public purposes only. We overrule this contention, observing in this connection that, "Hardly any project of public benefit is without some element of peculiar personal profit to individuals, hardly any private attempt to use that taxing power is without some colorable pretext of public good," and that, "Each case must be judged on its own facts, and any attempt at fixed definition must result in confusion and contradictions." Gray, Limitations of Taxing Power and Public Indebtedness, Sec. 176, p. 127; McQuillin on Municipal Corporations (Rev. 2d ed.), vol. 6, Sec. 2532, p. 339.

While it is settled that taxes may not be imposed except for public purposes, what is for a public purpose within the meaning of the provision of the article under consideration cannot be so precisely stated as to cover each of the varying situations that may arise. The correct approach to the problem is stated in Davis et al v. City of Taylor et al, 123 Texas 39, 43, 67 S. W. (2d) 1033 as follows:

"No exact definition can be made. Suffice it to say that, unless a court can say that the purposes for which public funds are expended are clearly not public purposes, it would not be justified in holding invalid a legislative act or provision in a city charter providing funds for such purposes."

Following this rule we must look to all the facts and not merely to the immediate purpose that the expenditure may serve in order to determine whether it is private or public.

The direct purpose which the city's expenditure here serves is the public purpose of aiding in the supply of water services to the annexed area. Water control and improvement districts are empowered in the interests of conservation to improve streams to prevent overflows and may restore the purity and sanitary condition of waters within the district and do all acts necessary to accomplish the foregoing to the resulting benefit to the property within the district, as well as to the state as a whole. The legislature has recognized that to a large extent these are powers that the cities may exercise in the performance of their local governmental functions. For example in the City of Pelly v. Harris County Water Control and Improvement Dist. No. 7, 145 Texas 443, 198 S. W. (2d) 450, a water district with powers similar to those of the district involved here owned and operated a waterworks system, sanitary sewer system, fire

department and garbage collection facilities for the residents of its territory. For a city to annex such territory and tax the added territory for the purpose of furnishing those services to the remainder of the city, and at the same time require the added area to bear the burden alone of furnishing the same services to themselves, would be manifestly unfair. Article 1182a remedies this inequity by providing a method whereby the city can annex such area and adjust inequities which might result.

We cannot say that the purposes for which public funds are expended in the present case are clearly not public purposes. The fact that the only service that the district in this case performs is to furnish to its residents irrigation services does not create a problem different in principle from that created in the Pelly case. The purposes served are public purposes for which the properties are apparently suited. We therefore uphold the validity of article 1182a against the attack made. For a similar situation in which municipal funds were used to remedy an inequitable situation although the funds flowed into private hands, see City of Houston v. Stewart, 99 Texas 67, 87 S. W. 663.

■ The City of Brownsville contends that article 1182a conflicts with article XI, section 5, of the constitution, which provides that no debt shall ever be created by a city unless the city at the same time makes provision to assess and collect annually a sufficient sum to pay the interest upon the debt and create a sinking fund of at least two per cent of the debt. This contention is based principally upon the erroneous assumption that the article requires the city to assume all indebtedness created by the water district regardless of whether it is created before or after the annexation of the water district territory. The assumption is unwarranted insofar as it relates to indebtedness created after annexation.

It is settled that the legislature cannot authorize a municipality to create a legal "debt" by contract without compliance with sections 5 and 7 of article XI. Andrus v. Crystal City (Tex. Com. App.), 265 S. W. 550; City of Ft. Worth v. Bobbitt, Atty. Gen., 121 Texas 14, 41 S. W. (2d) 228. The city has not undertaken to do so here. On the contrary the amount of indebtedness burdening the added area could be determined with reasonable accuracy at the time of annexation, and the city could, and should, then determine its ability to assume such indebtedness, and make provision to do so. The mere fact that the article does not direct compliance with the constitutional requirements under consideration is not a ground for declaring the statute void.

It is agreed by the parties that no provision was made to assess and collect annually such sums of money as might be necessary to pay the water tax assumed by the annexation. Whether it was necessary for the city to comply with section 5 of article XI before the assumption agreement could be binding upon the city *depends upon whether the assumption was the creation of a "debt" by contract.*

In City of Houston v. Tod, et al, Civ. App., 258 S. W. 839, affirmed (Com. App.), 276 S. W. 419, the Court of Civil Appeals in considering the question whether a statute fixing the liability of a city school district for a part of the indebtedness of an annexed school district territory was unconstitutional because of creating a "debt" within the meaning of the term as used by the constitution, said:

"We are also unable to discover any merit in the contention that the liability incurred by the city in extending its limits, by reason of the article of the statute before cited requiring the city to pay its proportion of the bonded indebtedness of the annexed territory, was the creation of a debt by the city in the meaning of the constitutional provision which declares that no debt shall ever be created by any city unless provision be made at the time of its creation for its payment, and that such extension must be held void because no provision was made at the time of the extension for the payment of the liability thereby incurred.

"We think the proposition answers itself. The quoted provision of the Constitution can have no application to a liability created by the Legislature in adjusting the equities arising from the practical operation of the statutes regulating the creation and changing of school districts in the advancement of the educational interests of the state. *That provision of the Constitution clearly applies only to debts directly created or contracted by the city in the exercise of its function of municipal government.*" (Emphasis added.) 258 S. W. at p. 843. See also T. & N. O. R. R. Co. v. Galveston County, 141 Texas 34, 169 S. W. (2d) 713, and City of Houston v. Stewart, 99 Texas 67, 87 S. W. 663.

The debt created by virtue of the annexation of the property in this case was not directly created by the city either in the performance of its function of municipal government or by contract, but was incidental to the annexation of the territory within the water district, and was for the purpose of adjusting

the equities of the situation resulting from the creation of a common orbit of power between the city and the district over the same territory. The city's contention is overruled.

In this connection, the city also contends that section 3 of the article violates article III, section 55, of the constitution which prohibits the legislature from releasing or extinguishing, or authorizing the releasing or extinguishing, in part or in whole, the indebtedness, liability or obligation of any corporation or individual, to any municipal corporation. Since, as above held, an existing obligation was assumed, none was released or extinguished by the operation of article 1182a, or the proceedings under the article.

To discuss in detail the remainder of the city's contentions would unduly lengthen this opinion. Suffice it to say, article 1182a does not, as contended, conflict with any of the following provisions of the State Constitution: article XI, section 3, providing that no city shall hereafter in anywise loan its credit; article XI, section 5, providing that no tax for any purpose shall ever be lawful for any one year which shall exceed 2 1/2 per cent of the taxable property of such city; article XVI, section 43, providing that no man or set of men shall ever be exempted, relieved or discharged from the performance of any public duty; article I, section 16, (nor article I, section 10 of the federal constitution), prohibiting the passage of laws impairing the obligations of contracts; article III, section 53, providing that the legislature shall have no power to pay, or authorize payment, of any claim created against any county or municipality of the state, under any agreement or contract, made without authority of law; article XVI, section 6, prohibiting all appropriations for private or individual purposes; article III, section 51, providing that the legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever.

■ We overrule the contentions of the city challenging the validity of article 1182a and the ordinance in question, and hold that both are valid; and further hold that the obligations imposed under their respective provisions and requirements are enforceable. We accordingly reverse and set aside the judgment of the Court of Civil Appeals and affirm the judgment of the trial court to that extent, including in our affirmance that part of the trial court's judgment which is aptly expressed consistent with our own views as follows:

"* * * that the annexation of the territory herein involved,

* * * has been regularly and legally affected, and that such territory now constitutes a part of the City of Brownsville, * * *; that such annexation proceeding does not affect the legal existence and corporate being and regular operation of said Water Control & Improvement District. * * *; that the provisions of said Article 1182a were made for the purpose of equalizing taxes in connection with the matter of new properties brought within Cities under extensions provided for under such Statute; that such provisions are not unreasonable and are not contrary to law; that, while some ambiguity exists in the wording of such Statute, the same is not so uncertain or contraditory as to require that the same be held void for that reason; that the provisions of such statute, through a proper cooperation of the officials of the City and of the Water District here involved, can be properly carried out and complied with, and are not contrary to public policy or the Constitution of this State."

Prior to the filing of this suit the water district had sued a number of property owners for delinquent bond taxes, but did not make the city a party. The property owners then sued the district and the city for relief not necessary to detail here. The water district agreed to delay further action on its tax suits until the differences between the property owners and the city could be adjudicated. Such suits are pending awaiting the outcome of the present suit. In the third paragraph of the trial court's judgment he purports to answer certain questions propounded by the parties, some of which are not determined by our holdings herein. The following is a recitation of the judgment in this connection:

"* * * there is considerable doubt in the opinion of the court as to whether many of the questions propounded by the parties, as hereinabove adjudged, are actually proper questions for adjudication in this proceeding under the Declaratory Judgment Act, such questions presenting more the matter of details of procedure than questions of statutory construction as such."

In view of the fact that this is a suit filed under the Declaratory Judgments Act we express no opinion on the queries answered in the trial court's judgment which are not determined by the above holdings, and limit the effect of our affirmance of that judgment to such holdings as our conclusion in connection therewith as above stated, without prejudice, however, to the determination in the pending suits above referred to, consistent with this opinion, of questions involving the details

of procedure and other incidental and hypothetical matters not herein decided.

To the extent stated the judgment of the trial court is affirmed and all court costs are taxed against the city. It is so ordered.

Opinion delivered April 20, 1949.

MR. JUSTICE HART, joined by JUSTICE BREWSTER, dissenting.

The majority opinion approved the holding of the trial court that the annexation by the city of territory within the water control and improvement district does not affect the powers of the district over the annexed territory. It seems to me that it should follow from this holding that district taxes must be paid on the property within the annexed territory on the same basis as on property in other portions of the district, and also that city taxes must be paid on this property on the same basis as on property in other portions of the city.

While the majority opinion says that "the property in the added area is burdened with both taxes," it also recognizes that "the city's payment of the water district taxes [is] a condition precedent to its right to collect city taxes on that area." If the city's assumption of the district taxes is thus legally enforceable, the necessary result is that if the city pays the district taxes the added territory is relieved from the payment of these taxes, and if the city does not pay the district taxes the added territory is relieved from the payment of the city taxes. Under the majority holding the added territory cannot be required to pay both taxes in either event.

In City of Pelly v. Harris County Water Control & Imp. Dist. No. 7, 145 Texas 443, 198 S. W. (2d) 450, this Court held that where both the city and the district continued to exercise their full powers over the annexed territory, the collection of taxes by both governmental units did not violate the constitutional requirements that taxes must be equal and uniform. In the present case, the majority holds that under similiar conditions it is valid for the city to assume the payment of district taxes on property within the annexed territory. In my judgment, these holdings are necessarily inconsistent. If it is equal and uniform taxation where the annexed territory pays full taxes to both governmental units, then it cannot be equal and uniform taxation where this territory is excused from the burden of paying taxes to one of these units.

We do not have here the situation where one unit takes over the functions formerly exercised by the other within the annexed territory. If this were true, then there would be a proper case for the adjustment of tax burdens. This was the situation in Tod v. City of Houston (Tex. Com. App.) 276 S. W. 419. There one unit superseded the other in authority over the annexed territory, and it was proper that the outstanding debt should be adjusted and that taxes should be paid only to the annexing unit. Here, however, both the district and the city exercise their respective powers without any impairment resulting from the annexation. Under the facts of this case, taxes can be equal and uniform within the meaning of the Constitution only if district taxes are collected on all property within the district on the same basis and if city taxes are collected on all property within the city on the same basis.

The majority opinion speaks of the adjustment of inequities in cases of annexation. If by inequities is meant inequalities of pecuniary benefits from taxes paid, then the opinion impliedly gives sanction to a consideration which has heretofore been held to be irrelevant to a determination of the question whether taxes are equal and uniform. In Norris v. City of Waco, 57 Texas 635, 641, this Court said:

"Some of the cases in which the question involved in this case has been considered seem to hold that a tax levied for municipal purposes upon lands situated as are those of the appellant, is illegal, for the reason that such taxation is not 'equal and uniform.' If by this is meant that the pecuniary benefit to be derived by every person who pays taxes shall be equal, there would be much force in this position, but such is not the meaning of the language.

"Taxes are said, within the meaning of the constitution, to be 'equal and uniform,' when no person nor class of persons in the taxing district, whether a state, county, or other municipal corporation, is taxed at a different rate than are other persons in the same district upon the same value or the same thing, and where the objects of taxation are the same by whomsoever owned, or whatever they be.

"Under the present and former constitution of this state, there can be but little question in this regard, in so far as an *ad valorem* tax upon property is concerned, for all property, save such as the legislature is authorized to exempt from taxation, must be taxed in proportion to its value.

"To hold that each person must receive the same benefit as another may from the expenditure of money raised by taxation

would be to hold that the law required an impossibility, for, in the very nature of things, some persons will derive greater pecuniary benefit from the expenditure of money for strictly public purposes than will others. In fact, some may receive no benefit whatever, save such as results to them from the preservation of order, protection to property, and the general prosperity which results therefrom, while others may and will be directly benefited by the increased value of their property and increase to their business which results from the expenditure of money raised by taxation, for purposes in every respect strictly public."

I cannot escape the conclusion that the majority opinion here departs from the accepted meaning of the requirement of Article VIII, Section 1 of our Constitution that "taxation shall be equal and uniform." I think that the Court of Civil Appeals reached the correct conclusion and that its judgment should be affirmed.

Opinion delivered April 20, 1949.

Rehearing overruled May 18, 1949.