

# THE ATTORNEY GENERAL
## OF TEXAS

July 22, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Terral R. Smith
Chairman
Natural Resources Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78769

Opinion No. JM-930

Re: Whether a city and a utility district may impose taxes for overlapping services (RQ-1307).

Dear Representative Smith:

You ask whether a recent amendment to the Municipal Annexation Act has the effect of subjecting residents of a special district, such as a municipal utility district, to the unconstitutional burden of double taxation when the district is annexed to a city but has not been dissolved. We conclude that the amendment does not expose the residents of an annexed political subdivision to the threat of double taxation by the city and the political subdivision. It does, however, create a conflict with section 43.075 of the Local Government Code, which governs the annexation of certain special districts.

The legislation that prompted your request is section 8 of Acts 1987, 70th Leg., ch. 1077, at 7397 (Senate Bill No. 962). The bill amends section 8 of former V.T.C.S. article 970a, the Municipal Annexation Act. Section 8, however, was repealed and codified as sections 42.041 and 42.042 of the Local Government Code during the regular session of the 70th Legislature. Section 311.031(c) of the Government Code provides that the repeal of a statute by a code does not affect an amendment of the statute by the same legislature which enacted the code and that an amendment is preserved and given effect as part of the code.

The specific portion of Senate Bill No. 962 which draws your concern adds subsection F to section 8:

> F. Subject to the provisions of this Subsection, a city may annex a political subdivision for full or limited purposes and the political subdivision, its taxing

> authority, and its board of directors may continue to exist for a period not to exceed ten (10) years from the date of such annexation; provided that at the time of such annexation at least ninety percent (90%) of the water, wastewater, roads, and drainage improvements for which district bonds are to be issued have been installed and are complete in accordance with the plans of such political subdivision to serve all of the area within its boundaries.

Acts 1987, supra, at 7399-7400. For convenience, we shall refer to this provision as subsection F. Your concern is that subsection F authorizes cities to annex political subdivisions such as municipal utility districts without abolishing the districts and assuming their bonded indebtedness. The residents of the annexed area would thus become subject to the taxing authority of both the city and the annexed political subdivision without an increase in the level of services provided to the area. You ask whether the residents would thereby be subjected to the unconstitutional burden of double taxation.

We note at this point that section 7(c) of article 970c, V.T.C.S., prohibits a city from imposing taxes on the property or residents of an area annexed for limited purposes on or after September 1, 1987. Article 970c was enacted as part of Senate Bill No. 962. See Acts 1987, supra, at 7396. We also note that your question is preceded by a reference to a municipal utility district that lies wholly within the extraterritorial jurisdiction of a home rule city. We will therefore assume that your question concerns the "full purpose" annexation of the entire area of a municipal utility district. See Local Gov't Code § 43.071 (city must annex entire area of district created under Tex. Const. art. XVI, § 59, outside city's boundaries if no part of district is within extraterritorial jurisdiction of another city); Water Code § 54.011 (municipal utility district may be created under art. XVI, § 59).

The constitution of this state does not expressly condemn double taxation. Article VIII, section 1, of the constitution, however, commands that taxation be "equal and uniform." It is this constitutional principle that is invoked in cases concerning claims of double taxation. Under this provision, the courts have held that property lying within the boundaries of both a city and a special

district and subject to taxation by both for the same kinds of services does not constitute unconstitutional double taxation or taxation that is not equal and uniform. City of Pelly v. Harris County Water Control and Improvement District No. 7, 198 S.W.2d 450 (Tex. 1946); Moore v. Edna Hospital District, 449 S.W.2d 508 (Tex. Civ. App. - Corpus Christi 1969, writ ref'd n.r.e.); Kuhlmann v. Drainage District No. 12 of Harris County, 51 S.W.2d 784 (Tex. Civ. App. - Galveston 1932, writ ref'd). See also Attorney General Opinions JM-626 (1987); JM-400 (1985). The courts applied this rule where the taxing entities were created as separate entities under separate provisions of the constitution, and both were delegated the power to assess and collect taxes to accomplish their respective purposes. It also appears that the courts were persuaded by the fact that while both entities had the authority to provide the same services to the same area, only one of the entities could actually provide such services. See City of Pelly, supra, at 454.

Though this rule bears potentially harsh consequences for the residents of an annexed political subdivision, it is a rule that finds acceptance in a number of other states. See 16 McQuillen, Municipal Corporations § 44.23 and cases cited therein. Subsection F of section 8 imposes no greater a burden on these taxpayers than the courts have sanctioned. Subsection F does not require the annexing city to assume either the liabilities or duties of the political sub-division, nor does it divest the political subdivision of its lawful authority for a period not to exceed ten years following the annexation.[1] If the legislature had required the city to immediately assume the duties and liabilities of the political subdivision, yet allowed the subdivision to retain its taxing authority, then a clear threat of double taxation would exist. Compare Wheeler v. City of Brownsville, 220 S.W.2d 457 (Tex. 1949) (statute requiring city to assume indebtedness attributable to part of water district annexed by city did not violate article VIII,

---

1. The ten-year limitation may be intended to allow the political subdivision to phase out its operations, retire its bonded indebtedness, and delay the city's assumption of the duties of the district. The legislative history of this provision, however, provides little insight into the factors motivating the adoption of the ten-year limitation.

section 1, of the Texas Constitution, where district continued to operate over and assess taxes on the annexed area).

The possibility that the residents of the annexed political subdivision will not receive a reciprocal amount of services from the city upon annexation does not render unconstitutional the statute authorizing the annexation of the political subdivision. The principle of equality and uniformity in taxation does not require that each person derive the same benefit as others from the expenditure of funds raised by taxation. Wheeler v. City of Brownsville, 220 S.W.2d 457 (Tex. 1949). This may operate harshly or even unjustly against some taxpayers; however, this result does not offend the "equal and uniform" provision of article VIII, section 1, of the constitution. Norris v. City of Waco, 57 Tex. 635 (1882).

Though we do not believe that subsection F imposes an unconstitutional burden of double taxation on the residents of a political subdivision annexed by a city pursuant to its provisions, we believe it creates a conflict with another statute affecting the authority of a city to annex the territory within certain kinds of special districts. In the years following the City of Pelly and Kuhlmann cases, the legislature sought to spread the burden of retiring the indebtedness of certain kinds of special districts to the taxpayers of home rule cities that annexed such districts. In 1947 it enacted article 1182c-1, V.T.C.S., codified in part as section 43.075 of the Local Government Code. Section 43.075 applies to a municipality that annexes all or part of the area of a water control and improvement district, a fresh water supply district, or a municipal utility district if the district does not include any area located in another municipality. Local Gov't Code § 43.075(a)(1), (b). It applies also to municipalities that incorporate over all or part of the area of such districts and adopt an ordinance making section 43.075 applicable to the municipality. Id. § 43.075(a)(2). See Attorney General Opinion JM-565 (1986). If all the area of the district is annexed, the municipality is required to take over all the property and other assets of the district, assume all debts, liabilities, and obligations of the district, and perform all functions of the district, including the provision of services. Id. § 43.075(d). This transfer of duties and obligations must take place by ordinance of the municipality within 90 days after the date the area becomes part of the municipality, or on the 91st day by operation of law. Id.

§ 43.075(e). The district is abolished once this transfer occurs. Id. The remainder of the statute details the conditions under which and the methods whereby the municipality discharges the obligations of the district and acquires its assets and facilities.

Section 43.075 reflects a longstanding and consistent public policy of requiring cities to assume the bonded indebtedness of the annexed portions of water-related special purpose districts. This policy is carried forth in a number of provisions relating to the annexation of water control and improvement districts, fresh water supply districts, municipal utility districts, irrigation districts, and conservation and reclamation districts. See Local Gov't Code §§ 43.022(d); 43.074(d); 43.076(b); 43.077(b). The courts have determined that the purpose of section 43.075 was to avoid the duplication of functions by a city and an annexed district. State v. City of Houston, 270 S.W.2d 235, 239 (Tex. Civ. App. - Galveston 1954, writ ref'd n.r.e.) (construing former article 1182c-1, V.T.C.S.). But these provisions also appear to be inspired by a desire to equitably adjust the tax burdens of the lesser and greater areas. See generally Ford v. Town of Coppell, 407 S.W.2d 304 (Tex. Civ. App. - Dallas 1966, writ ref'd n.r.e.). Section 43.075, then, addresses the problem described in your letter requesting this opinion.

Subsection F creates an apparent conflict with section 43.075. Subsection F deals with the annexation of territory of any political subdivision by a city, while section 43.075 deals with the annexation of enumerated special districts, including municipal utility districts, the focus of your inquiry. Because section 43.075 is the more specific but earlier enactment, we must determine whether subsection F governs the annexation of the special districts enumerated in section 43.075.

Section 311.026 of the Government Code provides that in the event a general provision in a code conflicts with a special provision, the two shall be construed, if possible, so that both may be given effect. If the conflict is irreconcilable, the special provision prevails as an exception to the general, "unless the general provision is the later enactment and the manifest intent is that the general provision prevail." (Emphasis added.)

Although both articles 970a and 1182c-1 were repealed and codified simultaneously, the amendment to article 970a

was approved nearly one month after the approval of the Local Government Code. Compare Acts 1987, 70th Leg., ch. 149, at 2548 (approved May 21, 1987), with Acts 1987, 70th Leg., ch. 1077, at 7403 (approved June 20,1987). It happens that the more general provision is the later enactment, but our review of the legislative history of Senate Bill No. 962 reveals no intention to override the more specific provision governing the annexation of water districts. Indeed, in the tape recordings of the legislative hearings that were made available to this office in the preparation of this opinion, no mention was made of section 43.075 or its predecessor, article 1182c-1.

The legislative history of Senate Bill No. 962 suggests that it was a compromise bill designed to accommodate a variety of competing interests. As originally introduced, the bill gave cities the authority to engage in limited purpose annexation. At approximately the same time, the House of Representatives adopted House Bill No. 1193, which sought to circumscribe the authority of cities to annex territory for limited purposes. H.J. of Tex., 70th Leg., Reg. Sess. 497 (1987). The engrossed versions of both bills contained virtually identical versions of article 970c. Id.; S.J. of Tex., 70th Leg., Reg. Sess. 1739 (1987). Neither, however, contained subsection F. The latter was added as a floor amendment to Senate Bill No. 962 in the House of Representatives. See H.J. of Tex., 70th Leg., Reg. Sess. 3907 (1987).

House Bill No. 1193 was tabled in the Senate, but the substance of the bill was incorporated into Senate Bill No. 962. The senate bill thus appears to be the product of legislative compromise. We think that the floor amendment adding subsection F to the bill may also reflect an attempt to strike a happy medium between the interested parties. See Debate on Tex. S.B. 962 on the Floor of the House of Representatives, 70th Leg. (May 29, 1987) (tape recording available from House Staff Services). Still, there is no indication in the available legislative history that the legislature considered section 43.075. Thus, we cannot conclude that the "manifest intent" of the legislature was that the general provisions of subsection F govern a city's annexation of all or part of the area of a water control and improvement district, fresh water supply district, or municipal utility district. Accordingly, we conclude that section 43.075 of the Local Government Code governs the annexation of such special districts by a city. Gov't Code § 311.026(b).

## S U M M A R Y

Section 8 of Acts 1987, 70th Leg., ch. 1077, at 7397 (amending section 8 of former article 970a, V.T.C.S.) does not impose the burden of double taxation on residents of a political subdivision annexed by a city pursuant to its provisions. This provision does not govern the annexation of the kinds of special districts described in section 43.075 of the Local Government Code.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General