AMERICAN HOME ASSURANCE; Birmingham Fire Insurance Company of Pennsylvania; and The Insurance Company of the State of Pennsylvania, Appellants,

v.

TEXAS DEPARTMENT OF INSURANCE; J. Robert Hunter, Commissioner of Insurance; Claire Korioth, Chairman, Allene D. Evans, and Deece Eckstein, Members, State Board of Insurance; Martha Whitehead, Texas State Treasurer; Dan Morales, Texas Attorney General; John Sharp, Texas Comptroller; and Texas Public Finance Authority, Appellees.

No. 03–94–00498–CV.

Court of Appeals of Texas, Austin.

Sept. 20, 1995.

Rehearing Overruled Oct. 25, 1995.

---

Anthony Icenogle, DeLeon & Boggins, P.C., Austin, for appellants.

Dan Morales, Attorney General, William E. Storie, Assistant Attorney General, Taxation Division, Austin, for appellees.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

American Home Assurance, Birmingham Fire Insurance Company of Pennsylvania, and The Insurance Company of the State of Pennsylvania appeal from a take-nothing judgment in favor of appellees[1] in a tax-protest suit brought pursuant to article 5.76–5 of the Insurance Code. *See* Tex.Ins.Code art. 5.76–5 (West Supp.1995) (the "Code"). We will affirm the trial-court judgment.

### THE CONTROVERSY

In 1991, the Legislature created the Texas Workers' Compensation Insurance Fund as a corporate body for the purpose of providing workers' compensation coverage to Texas employers. *See* Act of August 25, 1991, 72d Leg., 2d C.S., ch. 12, §§ 18.07–.19, 1991 Tex. Gen.Laws 342, 342–61 (Tex.Ins.Code Ann. arts. 5.76–3–.76–5, since amended). In order to raise money for the Fund, the Texas Public Finance Authority issued $300 million dollars in bonds to be discharged through maintenance-tax surcharges assessed against: "(1) each insurance company writing workers' compensation insurance in this state; (2) each certified self-insurer ...; and (3) the fund." Tex.Ins.Code Ann. art. 5.76–5, § 10(a) (West 1995).[2] The Texas Department of Insurance promulgated section 1.411 of the Texas Administrative Code in order to carry out the purposes of article 5.76–5. *See* 28 Tex.Admin.Code § 1.411 (1993) ("Rule 1.411"). Rule 1.411 required that the 1992 maintenance-tax surcharge be calculated based upon 1991 premiums and established recoupment procedures by which insurance companies could "pass through" the maintenance-tax surcharge to their policyholders. *Id.* In protesting their 1992 and 1993 tax payments, appellants contested this method of calculating the surcharge. In five points of error, appellants complain the recoupment scheme is unconstitutional and the trial court erred in upholding it.

 "[W]e begin with a presumption of validity. It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation...." *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995); *see also Prudential Health Care Plan, Inc. v. Commissioner of Ins.*, 626 S.W.2d 822, 827 (Tex.Civ.App.—Austin 1982, writ ref'd n.r.e.). If a legislative scheme or design can be justified under any possible state

---

1. Appellees are: the Texas Department of Insurance; J. Robert Hunter, Commissioner of Insurance; Claire Korioth, Allene D. Evans, and Deece Eckstein, former members of the State Board of Insurance; Martha Whitehead, Texas State Treasurer; Dan Morales, Texas Attorney General; John Sharp, Texas Comptroller; and the Texas Public Finance Authority.

2. Article 5.76–5, section 3(a) provides that the Authority "shall issue revenue bonds to: (1) establish the initial surplus of the fund; (2) establish and maintain reserves; (3) pay initial operating costs; (4) pay costs related to issuance of the bonds; and (5) pay other costs related to the bonds as may be determined by the board." Tex.Ins.Code Ann. art. 5.76–5, § 3(a) (West Supp.1995) (the "Code").

of facts, we will assume the existence of those facts. *Garcia*, 893 S.W.2d at 520; *Massachusetts Indem. & Life Ins. Co. v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 109 (Tex.Civ.App.—Austin 1985, no writ). It is also presumed that the legislature, in enacting a statute that regulates business activity, was familiar with the manner in which the business was conducted. *Massachusetts Indem.*, 685 S.W.2d at 109.

## RETROACTIVE LAWS

■ Appellants' first point of error complains that Rule 1.411 results in a retroactive tax that is unconstitutional under article I, section 16 of the Texas Constitution[3] and therefore beyond the Department's delegated power to promulgate under sections 5.76–5 and 5.68 of the Code.[4]

■ There is a distinction between a direct tax on property[5] and a tax imposed on the privilege of conducting business within the state. "A gross premiums tax is not a property tax, but is an excise tax, or, otherwise stated, a privilege or franchise tax which a company must pay for the privilege of doing business within the state." 19B John A. Appleman & Jean Appleman, *Insurance Law and Practice* § 10938 (1982); *see*

*Houston Oil Co. v. Lawson*, 175 S.W.2d 716, 723 (Tex.Civ.App.—Galveston 1943, writ ref'd); *Neild v. District of Columbia*, 110 F.2d 246, 253 (D.C.Cir.1940). The Department asserts the maintenance-tax surcharge described in article 5.76–5 of the Code differs from a direct property tax in that the surcharge is assessed only against "each insurance company *writing* workers' compensation insurance in this state." Code art. 5.76–5, § 10(a)(1) (emphasis added). Thus, the Department argues, the maintenance-tax surcharge is in the nature of a franchise tax assessed for the privilege of doing business in the state.[6] We agree.

We find persuasive the court's discussion in *Neild*. In *Neild*, plaintiffs challenged a revenue statute imposed on the corporate privilege to conduct business, contending the statute was unconstitutionally retroactive because the tax was based on gross receipts collected in the preceding year. Upholding the statute, the court held that because the tax was levied only on taxpayers exercising the privilege of doing business in the taxable year and was not *exclusively* a tax on the gross receipts of the preceding year, the tax was not impermissibly retroactive. *Id.* at 255. The court reasoned that a statute

3. Article I, section 16 of the Texas constitution provides, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." *Id.* Article I, section 16 prohibits retroactive laws only to the extent "they destroy or impair vested rights." *Deacon v. City of Euless*, 405 S.W.2d 59, 62 (Tex.1966); *see generally* 1 George D. Braden et al., *The Constitution of the State of Texas: An Annotated and Comparative Analysis*, 58–62 (1977).

4. The maintenance-tax surcharge must be sufficient to pay the debt service on the $300 million dollars in bonds and "shall be collected . . . on behalf of the fund in the same manner as provided under Article 5.68 of this code." Code art. 5.68, § 10(b). Article 5.68 is the basic maintenance tax on gross premiums used to subsidize the cost of regulation of the workers' compensation industry. Maintenance taxes for the current year are calculated based on premiums received in the previous year. *See, e.g.,* 28 Tex.Admin.Code 1.414 (1995).

5. Taxes on property owned in January may be levied at any time during the calendar year without violating the prohibition against retroactive laws. *Cadena v. State*, 185 S.W. 367, 368 (Tex.

Civ.App.—San Antonio 1916, writ ref'd). However, statutes purporting to levy property taxes for general-revenue purposes based upon a *preceding* year are prohibited by article I, section 16. *See Castleberry v. Coffee*, 272 S.W. 767, 768 (Tex.1925); *see also Hanson v. Town of Flower Mound*, 539 S.W.2d 178, 179–80 (Tex.Civ.App.—Fort Worth 1976, no writ).

6. *See Sterling Oil & Ref. Corp. v. Isbell*, 202 S.W.2d 300, 302 (Tex.Civ.App.—Austin 1947, no writ) (a franchise tax is a tax assessed by the state against a corporation for the privilege of doing business in the state; the purpose of the law is "to exact such a tax commensurate with the value of such privilege so granted"); *see also Houston Oil Co. v. Lawson*, 175 S.W.2d 716, 723 (Tex.Civ.App.—Galveston 1943, writ ref'd) ("a franchise tax is neither a tax upon the property or the income of a corporation, though both are to be regarded in measuring the tax").

Taxes on gross premiums are assessed in lieu of franchise taxes. *See* Tex.Tax Code Ann. § 171.052 (West 1992) (insurance companies obligated to pay taxes based on their gross receipts are exempt from franchise tax); *see also Prudential Health*, 626 S.W.2d at 828.

should not be construed to operate retrospectively if it may be construed in a manner that avoids such operation. *Neild,* 110 F.2d at 254 (citing *Shwab v. Doyle,* 258 U.S. 529, 535, 42 S.Ct. 391, 392, 66 L.Ed. 747 (1921)). "A statute is not retroactive merely because it draws upon antecedent facts for its operation." *Neild,* 110 F.2d at 255 (quoting *Lewis v. Fidelity & Deposit Co.,* 292 U.S. 559, 571, 54 S.Ct. 848, 853, 78 L.Ed. 1425 (1933)); *see also Reliance Ins. Co. v. Nutt,* 403 S.W.2d 828, 830–31 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.) ("surviving company" that merged with former insurance company liable for taxes based on gross premiums collected by defunct company in preceding year).

Appellants argue that Rule 1.411 results in a *direct tax* on gross premiums that cannot be for the privilege of engaging in business in Texas because: (1) self-insurers are taxed, and (2) insurers are taxed even after they leave the workers' compensation market. *See* Code art. 5.76–5, §§ 10(a)(2), (e). The pertinent parts of article 5.76–5, section 10 provide as follows:

> (a) A maintenance tax surcharge is assessed against: (1) each insurance company writing workers' compensation insurance in this state; (2) each certified self-insurer as provided in [Tex.Lab.Code Ann. §§ 407.001–.133 (West Supp.1995) ]; and (3) the fund.
>
> . . . .
>
> (e) *As a condition of engaging in the business of insurance in this state,* an insurance company writing workers' compensation insurance in this state agrees that if the company leaves the workers' compensation insurance market in this state it remains obligated to pay, until the bonds are retired, the company's share of the maintenance tax surcharge assessed under this section in an amount proportionate to that company's share of the workers' compensation insurance market in this state as of the last complete reporting period before the date on which the company ceases to engage in the insurance business in this state. The proportion assessed against the company shall be based on the company's workers' compensation insurance gross premiums for the company's last reporting period. However, a company is not required to pay the proportionate amount in any year in which the surcharge assessed against insurance companies continuing to write workers' compensation insurance in this state is sufficient to service the bond obligation. The abolition of the fund under Section 2(d), Article 5.76–3, Insurance Code, does not affect the liability of an insurance company for a maintenance tax surcharge assessed under this section.

Code art. 5.76–5, §§ 10(a)(2), (e) (emphasis added).

We reject appellants' argument as it pertains to the taxing of self-insurers. Like their insurance-company counterparts, self-insurers are taxed for the privilege of engaging in the analogous practice of self-insurance. We also disagree with appellants' argument regarding the constitutionality of section 10(e). The maintenance-tax surcharge is assessed in the year the company ceases to do business.[7] An insurance company may not escape payment of maintenance-tax surcharges assessed in the year it ceased to conduct business in the state. *See Nutt,* 403 S.W.2d at 831. We overrule appellants' first point of error.

## PUBLIC FUNDS FOR PRIVATE PURPOSES

■ Appellants' second point of error complains the taxation scheme is unconstitutional because it purports to authorize the use of public funds for private purposes. *See* Tex. Const. art. VIII, § 3 ("Taxes shall be levied and collected by general laws and for public purposes only."); Tex. Const. art. XVI, § 6 ("No appropriation for private or individual purposes shall be made, unless authorized by this Constitution"). Appel-

---

7. *See Neild,* 110 F.2d at 255 ("Since [the tax] can be levied only when the taxpayer both exercises the privilege of doing business in the taxable year and has been in receipt of gross receipts during a previous year, the tax, obviously is not exclusively on gross receipts apart from the privilege.").

lants' argument may be summarized as follows: (1) the Fund, created by articles 5.76–3–.76–5, is not a "state agency"; (2) the Fund serves no public purpose because private carriers presently supply the market; (3) the Fund competes with private carriers, reducing their share of the market and affecting adversely their financial strength; (4) the part of the market requiring "last resort" workers' compensation insurance consists of only a small group of employers unrepresentative of the public-at-large; (5) two small, private groups—businesses insured by the Fund and bondholders—are the only beneficiaries of the public funds; and (6) absent a constitutional amendment, the constitutional provisions quoted above forbid the taxation scheme in question.

We reject the argument. Firstly, the Fund is a "state agency" for purposes relevant to the present discussion.[8] Secondly, one may not conclude that the Fund expends money for private purposes in violation of Article VIII, section 3 and Article XVI, section 6 of the Constitution. No inexorable rule marks the division between a public purpose or use and a private purpose or use. "Obviously no such rule could be laid down." *Bland v. City of Taylor,* 37 S.W.2d 291, 293 (Tex.Civ.App.—Austin 1931), *aff'd sub nom., Davis v. City of Taylor,* 123 Tex. 39, 67 S.W.2d 1033 (1934). Rather, any issue in that regard must be decided in another way

entirely. "The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts *when abused;* " and, courts should not reverse the legislative determination except in those instances when it is clearly wrong. *Id.* (emphasis added); *see also Wheeler v. City of Brownsville,* 148 Tex. 61, 220 S.W.2d 457, 463 (1949). We cannot say the legislative determination is clearly erroneous in this instance. It is manifest that the Fund expends money in furtherance of the purposes that underlie the workers' compensation laws—laws that "have become part of our public policy." *Woolsey v. Panhandle Ref. Co.,* 131 Tex. 449, 116 S.W.2d 675, 676 (1938). The characteristics of the market for workers' compensation insurance, referred to in items (2) through (4) of appellants' argument, were presumably known to the legislature and that body presumably evaluated them but reached different conclusions from those advocated by appellants. We cannot say the legislature was clearly wrong. We therefore overrule the point of error.

## EQUAL AND UNIFORM TAXATION

■ Appellants' third and fourth points of error complain on various grounds that Rule 1.411 results in taxation that is not equal and uniform as required by article VIII, section 1 of the constitution. *See* Tex. Const. art. VIII, § 1.[9] It will be seen in our discussion

8. The Fund is governed by a board of directors appointed by the Governor with the advice and consent of the Senate. Code art. 5.76–3, § 3(a). The Board's decisions are "subject to review by the commissioner of insurance in the manner provided by the Administrative Procedure and Texas Register Act." *Id.* § 2(c). The Fund is subject to the Texas Sunset Act, Tex.Gov't Code Ann. § 325.001–.024 (West 1988 & Supp.1995). *Id.* § 2(d). Open-meeting and open-records legislation applies to the Fund. *Id.* § 2(b). Against these rather fundamental characteristics of a state agency, one must set the legislature's express declarations in section 21 of Code article 5.76–3: "The fund is an insurance company for purposes of the Texas Workers' Compensation Act" and "[u]nless specifically defined as a state agency in a specific statute, the fund is not a state agency." Code art. 5.76–3, § 21(a), (c). The heading of section 21 indicates the intended scope of that section: It applies to determine the "[a]pplicability of other statutes." The purpose of subsection (a), designating the Fund a workers' compensation insurer, is obviously to effectu-

ate the general purpose of the Fund in relation to the Workers' Compensation Act. A purpose of subsection (c) was to preclude application of the Administrative Procedure and Texas Register Act to the Fund's decisions, postponing the applicability of that Act until the proceedings come before the commissioner of insurance for that officer's decision. *See* Administrative Procedure and Texas Register Act, 64th Leg., R.S., ch. 61, §§ 1–24, 1975 Tex.Gen.Laws 136, 136–148 (Tex. Rev.Civ.Stat.Ann. art. 6252–13(a), since repealed and codified at Tex.Gov't Code Ann. §§ 2001.171–.178).

9. Section 1 of article VIII provides:

Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law. The Legislature may impose a poll tax. It may also impose occupation taxes, both upon natural persons and upon corporations,

below that the complaint essentially pertains not to the imposition of the tax but to its collection. Consequently, there is no constitutional infirmity under article VIII, section 1. *See Wheeler v. City of Brownsville,* 148 Tex. 61, 220 S.W.2d 457, 460–61 (1949); *Edinburg Improvement Ass'n v. City of Edinburg,* 191 S.W.2d 752, 754 (Tex.Civ.App.— San Antonio 1945, no writ).

■ Appellants contend first that Rule 1.411 is invalid because it authorizes a "recoupment" system instead of a "pass-through" system as expressly prescribed by article 5.76–5, section 10(d). *See* Code art. 5.76–5, § 10(d).[10] A "pass-through" system, in appellants' view, is one that would allow insurers to immediately and directly charge policyholders for the surcharge.[11] We do not believe the words "pass-through," as used in section 10(d) of Code article 5.76–5, were intended to bear the single, narrow, and re-

stricted meaning assigned to them by appellants. The manifest and central purpose of the statute is to place upon policy holders the ultimate burden of the surcharge. Rule 1.411 effectuates that purpose. We conclude the rule is a reasonable interpretation of the statute by officials assigned responsibility for administering the scheme. *See Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756 (Tex.1982).

Appellants complain of that part of Rule 1.411 requiring an insurer to remit to the Department any excess, over and above the amount of the surcharge, that an insurer may collect from its policyholders in a particular year.[12] The Department rejoins by arguing, in derogation of its own rule, that no harm results because insurers are in practice allowed to retain the excess and to credit the amount against the surcharge for the succeeding year.[13] We believe the rule is not

other than municipal, doing any business in this State. It may also tax incomes of both natural persons and corporations other than municipal, except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax; Provided, that two hundred and fifty dollars worth of household and kitchen furniture, belonging to each family in this State shall be exempt from taxation, and provided further that the occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business. Tex. Const. art. VIII, § 1.

10. Section 10(d) provides: "The fund and each insurance company may pass through the maintenance tax surcharge to each of its policyholders." Code art. 5.76–5, § 10(d).

11. The evidence showed the following: Birmingham Fire Insurance Company of Pennsylvania wrote $35,125,602 in gross written premiums in 1991. The 1992 maintenance tax surcharge on the 1991 premiums totalled $647,013.59. Effective January 1, 1992, The Insurance Company of the State of Pennsylvania changed its policy to allow its policyholders to elect to have larger deductibles, thereby reducing their premiums. This decision caused Birmingham policyholders to switch companies in order to take advantage of the lower rates offered by The Insurance Company of the State of Pennsylvania. In the 1992 calendar year Birmingham lost $11 million in premiums due to policyholders canceling their polices in order to take advantage of the larger deductibles. During the recoupment period, June 1, 1992 through May 31, 1993, Birmingham

premiums totalled approximately $9 million. Birmingham had selected before the June 1, 1992 deadline, a recoupment percentage of 2.031 percent. Based on this percentage, Birmingham would recoup only $182,790 instead of the $647,013.59 paid in surcharges in taxes over the first recoupment period.

12. Rule 1.411(c)(8) provides:

If an insurance company or the Texas Workers' Compensation Insurance Facility (facility) collects from its insureds as recoupment an amount in excess of the amount actually paid as surcharges under subsection (a)(2) and (a)(3) of this section, the company shall pay this excess amount to the [department] in the form and manner required by the department. The department shall deposit the excess amounts collected under this subsection in the same manner and *in the same accounts as surcharges collected under subsection (a)(2) and (3) of this section* and these amounts shall be used for the same purposes as those surcharges.

28 Tex.Admin.Code 1.411(c)(8) (1993) (emphasis added).

13. A "legislative" administrative rule is based on a grant of legislative power to an agency. *See* Kenneth C. Davis, *Administrative Law Text* § 5.03 (3d ed. 1972). Article 1.03A of the Code grants rulemaking power to the Commissioner of Insurance. Tex.Ins.Code Ann. art. 1.03A (West Supp.1995) ("The Commissioner may adopt rules and regulations for the conduct and execution of the duties and functions of the department only as authorized by a statute."). The consequences of the Department's failure to enforce this aspect of the rule are immaterial to our decision here.

invalid on the ground claimed. Any excess must be held by either the Department or the insurer who receives it from the policyholders. In its administration of the statutory scheme, the agency reasonably could have concluded that the public should hold the excess as a credit until the subsequent year to avoid a windfall to insurers, to encourage accuracy in their calculations, and to discourage repeated recoupment of excess sums from policyholders. *Id.*

Appellants complain the recoupment provisions of Rule 1.411 make it impossible for insurers to calculate with precision the amount they must prorate among and charge their policyholders.[14] Consequently, similarly situated insurers will pay different amounts of surcharge in a particular year. We do not believe the rule is invalid for this reason. Over time, operation of the rule results in all insurers recovering from their policyholders the amounts paid as surcharges, notwithstanding any over- or under-collection in a particular year. The purpose of the statute is thus effectuated. We believe the provisions are reasonable and therefore valid. *Id.*

We conclude that Rule 1.411 authorizes an equal and uniform tax. The maintenance-tax surcharge for 1992 was calculated by adding:

the maintenance tax surcharge at the rate of 1.140% of the correctly reported gross workers' compensation insurance premiums for the calendar year 1991 to cover debt service for bonds issued on behalf of the [Fund]; and ... an additional maintenance tax surcharge at the rate of .702% of the correctly reported gross workers' compensation insurance premiums for the calendar year 1991 to cover all additional debt service for bonds issued on behalf of the [Fund].

28 Tex.Admin.Code § 1.411(a)(2), (3) (1993). We overrule appellants' third point of error.

Section 12(b) of article 5.76–3 grants the Fund, one of appellants' competitors in the workers' compensation market, a tax credit equal to two percent of the Fund's gross written premiums. Code art. 5.76–3, § 12(b).[15] The tax credit is applied first against the Fund's liability for the maintenance-tax surcharge. *Id.* § 12(b)(1). Appellants argue the Fund gains an unfair advantage in the form of reduced taxes and that no rational or reasonable basis exists for the legislature's classification.

In the present circumstances, the Fund is taxed "in the same manner as an insurance carrier authorized by [the Department] to write workers' compensation insurance," Code art. 5.76–3, § 12(a), except that the Fund receives a two-percent tax credit. We must determine whether the greater proportion of high-risk employers insured by the Fund, as the insurer of last resort, justifies a separate and distinct classification.

The legislature may create separate tax classifications which treat differently those engaged in the same business so long as a reasonable basis justifies the disparate treatment. *Texas Co. v. Stephens,* 100 Tex. 628, 103 S.W. 481, 485 (1907); *Prudential Health,* 626 S.W.2d at 830.

> The courts ... can only interfere when it is made clearly to appear that an attempted classification has no reasonable basis in the nature of the business classified, and that the law operates unequally upon subjects between which there is no real difference to justify the separate treatment of them undertaken by the Legislature.

*Texas Co.,* 103 S.W. at 485; *see also American Transfer & Storage Co. v. Bullock,* 525 S.W.2d 918, 924 (Tex.Civ.App.—Austin 1975, writ ref'd); *Dallas Gas Co. v. State,* 261 S.W. 1063, 1069 (Tex.Civ.App.—Austin 1924, writ ref'd). We must look to the nature of the business conducted to determine the appro-

---

**14.** Under Rule 1.411, insurance companies may use whatever recoupment rate they consider necessary to recover the surcharges paid. 28 Tex.Admin.Code § 1.411(c) (1993). Appellants introduced evidence at trial showing that each of the three plaintiffs used the same rate of recoupment even though the companies wrote substantially different amounts of premiums; one of the three plaintiffs actually recouped more than it paid in taxes.

**15.** The matters discussed here refer to appellants' fourth point of error, asserting the trial court erred in rejecting their complaint of unequal and non-uniform taxation on additional grounds.

priateness of the classifications. *Prudential Health,* 626 S.W.2d at 830–31. Only a slight difference in the subject matter taxed justifies a separate classification. *Hurt v. Cooper,* 130 Tex. 433, 110 S.W.2d 896, 901 (1937); *Fairmont Dallas Restaurants, Inc. v. McBeath,* 618 S.W.2d 931, 933 (Tex.App.—Waco 1981, no writ).

In *Texas Company,* the supreme court upheld a statute that levied higher taxes against those engaged in the wholesale business of selling oil, as opposed to wholesalers of other commodities. 103 S.W. at 485. In assessing the reasonableness of the legislature's classification, the court considered the following factors:

Differences in the profits derived, in the extent of the consumption of the articles, and therefore in the facility with which the burdens may in the course of business be distributed among consumers generally, and other conditions that might be supposed could properly be taken into consideration by the Legislature in making classifications and determining the amount of the tax to be laid upon each; and it would be only an extreme and a clear case that would justify an interference by the courts with the legislative action.

*Id.* Differences in commodities sold or services rendered are appropriate bases for distinct classifications. *Dancetown, U.S.A., Inc. v. State,* 439 S.W.2d 333, 336 (Tex.1969).[16]

We cannot conclude that the legislature's classification is so arbitrary and unreasonable as to render unconstitutional section 12(b) of article 5.76–3, granting a two-percent tax credit to the Fund. Although appellants and the Fund perform the same business function—that of providing workers' compensation insurance to the general public—the Fund assumes the additional responsibility of insuring high-risk employers who have not been able to find workers' compensation in the private market. The difference in profits that may be derived by a discriminating private compensation carrier and an insurer of last resort and the burdens associated with otherwise uninsurable employers are appropriate factors that the legislature might have considered. We overrule appellants' third and fourth points of error.

## DOUBLE TAXATION

Appellants' fifth point of error complains the trial court erred in concluding that doubling the first-year tax, as authorized by Rule 1.411(a)(3), was valid under sections 7 and 8(a) of article 5.76–5.[17] Appellants argue that Rule 1.411(a)(3) conflicts with the statutes upon which it is based in that article 5.76, section 10(b) requires the maintenance-tax surcharge to be collected in the same manner as article 5.68(d) of the Code. We find no merit in appellants argument because the surcharge is to be *collected* in the "same manner as provided under Article 5.68 of this Code." Code art. 5.76–5, § 10(b). Article 5.68 does not address the method of calculat-

16. In *McBeath,* a restaurant company challenged a statute that assessed a five-percent tax on the sale of mixed drinks on an airplane, but assessed a ten-percent tax if the drinks were sold elsewhere. 618 S.W.2d at 931. The court upheld the statute, reasoning that the restaurant and airlines industries were so diverse as to permit a different tax treatment with regard to a similar product. The focus of the court's inquiry was on the principal business or occupation of the respective companies. Although both restaurant and airline companies serve mixed alcoholic beverages, restaurants are primarily in the business of serving food while airline companies mainly transport passengers. *Id.* at 934; *see also Calvert v. McLemore,* 163 Tex. 562, 358 S.W.2d 551, 552 (1962) (law that distinguished between motion pictures held at permanent theaters and those "held at places other than at a fixed and regularly established motion picture theater" held unconstitutional); *H. Rouw Co. v. Texas Citrus Comm'n,* 151 Tex. 182, 247 S.W.2d 231, 234–35 (1952) (section of statute which exempts natural persons from tax imposed by statute upon corporate citrus-fruit growers held unconstitutional).

17. Sections 7 and 8(a) provide as follows:

Sec. 7  In a bond resolution, the board may make additional covenants with respect to the bonds and the designated income and receipts of the fund pledged to their payment and may provide for the flow and the establishment, maintenance, and investment of funds and accounts with respect to the bonds....
Sec. 8  (a) A bond resolution may establish special accounts including an interest and sinking fund account, reserve account, and other accounts.
Code art. 5.76–5, §§ 7, 8(a). *See also* Code art. 5.76, § 3(a)(2) ("On behalf of the fund, the [Authority] shall issue revenue bonds to: ... establish and maintain reserves.").

ing the amount of taxes collected. We overrule appellants' fifth point of error.

Having overruled each of appellants' points of error, we affirm the trial-court judgment.